IN THE SUPREME COURT OF NORTH CAROLINA

No. 245A08-2

Filed 17 August 2018

STATE OF NORTH CAROLINA

v.

TERRENCE LOWELL HYMAN

Appeal pursuant to N.C.G.S. § 7A-30(2) and on writ of certiorari pursuant to N.C.G.S. § 7A-32(b) to review the decision of a divided panel of the Court of Appeals, ___ N.C. App. ___, 797 S.E.2d 308 (2017), reversing an order denying defendant's motion for appropriate relief signed on 12 May 2015 by Judge Cy A. Grant, Sr., and entered in Superior Court, Bertie County. Heard in the Supreme Court on 5 February 2018.

*Joshua H. Stein, Attorney General, by Mary Carla Babb and Nicholaos G. Vlahos, Assistant Attorneys General, for the State-appellant.*

*Glenn Gerding, Appellate Defender, by Nicholas C. Woomer-Deters, Assistant Appellate Defender, for defendant-appellee.*

ERVIN, Justice.

The question before us in this case is whether the record supports the trial court's decision to deny defendant's motion for appropriate relief. After carefully considering the record in light of the applicable law, we hold that, while the claim asserted in defendant's motion for appropriate relief is not subject to the procedural bar established by N.C.G.S. § 15A-1419(a)(3), the trial court did not err by denying

defendant's motion for appropriate relief for the reasons stated by the Court of Appeals. As a result, we affirm the decision of the Court of Appeals, in part; reverse that decision, in part; and remand this case to the Court of Appeals for consideration of defendant's remaining challenges to the trial court's order denying his motion for appropriate relief.

At approximately 10:00 p.m. on 5 May 2001, Earnest Bennett arrived at the L and Q nightclub with his friends Shelton Lamont Gilliam, Tyrone Knight, and Alton Bennett. As the night progressed and early morning arrived, a man confronted Mr. Bennett, leading to an argument between the two men that escalated into an altercation after a "crew of people" approached Mr. Bennett and began to hit him with "bottles, chairs and basically everything that they could find."

Derrick Speller testified for the State at defendant's trial that, after the altercation had been in progress for approximately fifteen minutes, he observed defendant Terrence Lowell Hyman enter the nightclub with a firearm and shoot it at Mr. Bennett. At that point, Mr. Speller observed Mr. Bennett "clench his side and run for the door." As Mr. Bennett reached the nightclub door, defendant shot him again in the small of his back. According to Mr. Speller, Mr. Bennett and defendant exited the nightclub once defendant had shot Mr. Bennett a second time. Outside the nightclub, Mr. Speller saw defendant "kneeling down over" Mr. Bennett, who was on

the ground, and shoot Mr. Bennett a third time.[1] Mr. Bennett died as a result of the gunshot wounds that he sustained on this occasion.

On the other hand, Demetrius Pugh testified on defendant's behalf that he observed Demetrius Jordan shoot Mr. Bennett multiple times inside and outside of the nightclub. According to Demetrius Pugh, Mr. Jordan had a .38 caliber handgun inside the nightclub and procured a nine millimeter handgun from his van after leaving the nightclub's interior.[2] In addition, Lloyd Pugh testified on defendant's behalf that he heard two gunshots inside the nightclub. Although Lloyd Pugh could not see who had fired these shots, he knew that defendant had not fired them because he could see defendant, who was leaving the nightclub at that time, and observed that he did not have a firearm on his person when the shots were fired. As Lloyd Pugh attempted to bring the fight inside the nightclub under control, he heard additional gunshots outside. Simultaneously, Lloyd Pugh observed defendant reentering the nightclub without a firearm in his possession.

On 30 July 2001, the Bertie County grand jury returned a bill of indictment charging defendant with first-degree murder. The charges against defendant came on for trial before the trial court and a jury at the 25 August 2003 criminal session of Superior Court, Bertie County.

---

[1] Robert Wilson, another witness for the State, also identified defendant as the individual who shot Mr. Bennett.

[2] Mr. Speller admitted that Mr. Jordan fired a nine millimeter handgun into the air outside the nightclub.

During the trial, Mr. Speller testified on direct examination that defendant's trial counsel, Teresa Smallwood, had spoken with him before the trial and asked for his help with the case.[3] In the course of a cross-examination conducted by Ms. Smallwood, Mr. Speller testified that he had sought assistance from Ms. Smallwood's law firm with respect to a probation violation proceeding at some point prior to the time that this case came on for trial. In addition, Mr. Speller testified that:

> Q.: At some point in time during that conversation it came up that you had been at the L and Q, do you remember that?
>
> A.: No
>
> . . . .
>
> Q.: Do you remember when you told the members of the jury this earlier that I wanted you to help me, it was because you told me a story on that particular occasion as to what you say happened; isn't that correct?
>
> A.: No, it's not.
>
> . . . .
>
> Q.: You sat in my office and you told me across the desk from me that you had seen Demetrius Jordan . . . . shoot a weapon; isn't that correct?
>
> A.: No, it's not.
>
> Q.: And you told me that the reason you didn't want to come forward is because you had been hustling for

---

[3] Defendant's other trial counsel, W. Hackney High, stated during a bench conference that he had not known that Mr. Speller and Ms. Smallwood had conversed prior to trial until that fact emerged during Mr. Speller's testimony.

Turnell Lee and Demetrius Jorden and them dudes was lethal. Do you recall saying that?

A.: No, I did not.

Q.: They would off you in a minute. You don't remember that?

A.: No.

Q.: I didn't either. Until I went back and got the notes. Then in the course of the conversation when you and I were talking, you said that you would help in any way you could; isn't that correct?

A.: No, it's not.

. . . .

Q.: Well earlier you told the members of the jury that I said I needed you to help?

. . . .

A.: Not in the conversation that you're referring to.

. . . .

Q.: Do you recall that at the point in time when we were talking about what it was you knew about the L and Q, do you recall telling me that Turnell Lee and Demetrius Jordan were after you to go and tell the police something that you knew wasn't true?

A.: No, we never had that conversation.

. . . .

When I spoke to you about that case, that was when you sent Tyrone Watson to say that you wanted to talk to

me, Turnell and a few other people. I went to your office and seen—and talked to you and Tanza [Ruffin][4] in the parking lot at your office. You all was leaving. I told you at that time I couldn't help you on this case, that I would harm him more than I could help him if I was brought on the stand to testify. That's the only conversation that you and I ever had about this case.

Q.: Derrick, that's the second time we talked about this; isn't that correct?

. . . .

Didn't I represent you in '01?

A.: No, Tanza [Ruffin] represented me.

. . . .

Q.: And I ultimately represented you in that case; isn't that correct?

. . . .

Before the judge, you and I stood before the judge on that case?

A.: Yes, we stood before the judge.

Q.: And it was in the occurrence of that that you talked about all these things as to why you never came forward; isn't that correct?

A.: No, it is not.

At one point in her cross-examination of Mr. Speller, Ms. Smallwood attempted to question Mr. Speller using a one-page document that had Mr. Speller's name at the

---

[4] At the time of defendant's trial, Ms. Ruffin was Ms. Smallwood's law partner.

top and writing on the right-hand side, but was precluded from doing so by the trial court.

On 12 September 2003, the jury returned a verdict convicting defendant of first-degree murder. On 16 September 2003, the jury returned a verdict determining that no aggravating circumstances existed and that defendant should be sentenced to a term of life imprisonment without the possibility of parole. Based upon the jury's verdicts, the trial court entered a judgment sentencing defendant to a term of life imprisonment without parole.

In seeking relief from the trial court's judgment before the Court of Appeals, defendant argued that the trial court had erred by failing "to conduct a hearing when the trial court became aware of a potential conflict of interest on the part of" Ms. Smallwood arising from the fact "that [Ms.] Smallwood had previously represented [Mr.] Speller in an unrelated case." *State v. Hyman*, 172 N.C. App. 173, 616 S.E.2d 28, 2005 WL 1804345, at *4 (2005) (unpublished) (*Hyman I*). After determining that it could not "find from the face of the record that defendant's attorney's prior representation of [Mr.] Speller affected her representation of defendant," *id.* at *6, the Court of Appeals remanded this case to the Superior Court, Bertie County, "for an evidentiary hearing 'to determine if the actual conflict adversely affected [the attorney's] performance,'" *id.* (alteration in original) (quoting *State v. James*, 111 N.C. App. 785, 791, 433 S.E.2d 755, 759 (1993)).

An evidentiary hearing was conducted before the trial court on remand on 3 October 2005 and 2 November 2005. At the remand hearing, Ms. Smallwood testified that the information that she used during her cross-examination of Mr. Speller stemmed from a meeting that she had had with Mr. Speller, during which she had taken notes. According to available court records, Ms. Smallwood appeared on Mr. Speller's behalf at a probation revocation hearing on 26 September 2002, although Ms. Ruffin was listed as Mr. Speller's attorney of record in that case.[5] On 28 November 2005, the trial court entered an order concluding that Ms. Smallwood's "representation of [defendant] was not adversely affected by her previous representation of [Mr.] Speller." On appeal to the Court of Appeals from the trial court's remand order, defendant argued that "[Ms.] Smallwood's actual conflict of interest adversely affected her representation of him." *State v. Hyman*, 182 N.C. App. 529, 642 S.E.2d 548, 2007 WL 968753, at *2 (2007) (unpublished) (*Hyman II*). The Court of Appeals rejected defendant's challenge to the trial court's remand order on the grounds that defendant had not challenged any of the trial court's findings of fact, rendering them conclusive for purposes of appellate review, *id.* at *4, and that "[d]efendant [had] failed to show [that] the trial court [had] erred when it concluded that [Ms.] Smallwood's representation of him was not adversely affected by her

---

[5] Ms. Smallwood had been appointed to represent defendant in this case on 14 May 2001.

previous representation of [Mr.] Speller," *id.* at *5. As a result, the Court of Appeals affirmed the trial court's remand order. *Id.* at *6.

On 8 May 2008, defendant filed a petition seeking the issuance of a writ of habeas corpus with the United States District Court for the Eastern District of North Carolina. On 31 May 2008, defendant filed a petition seeking the issuance of a writ of certiorari by this Court authorizing review of the Court of Appeals' decisions in *Hyman I* and *Hyman II* and the trial court's remand order. This Court denied defendant's certiorari petition on 22 December 2008. On 31 March 2010, United States District Judge Terrence W. Boyle entered an order opining that "[Ms.] Smallwood's actual conflict of interest adversely affected her performance" and issuing the requested writ of habeas corpus. The State noted an appeal to the United States Court of Appeals for the Fourth Circuit from the District Court's order. On 21 July 2011, the Fourth Circuit released an opinion staying further federal appellate proceedings in order "to provide the North Carolina courts with an opportunity to weigh in on the procedural and substantive issues." *Hyman v. Keller*, No. 10-6652, 2011 WL 3489092, at *11 (4th Cir. Aug. 10, 2011) (per curiam).

On 15 July 2013, defendant filed a motion for appropriate relief in Superior Court, Bertie County, in which he asserted, among other things, that his "constitutional right to effective, conflict-free trial counsel [had been] violated." Defendant argued that "[Ms.] Smallwood was a critical defense witness because she could have testified concerning a prior statement by [Mr.] Speller, a key State's

witness, that both impeached his testimony and tended to exculpate [defendant]" and requested that an evidentiary hearing be held at which he could "present evidence, which has never been considered by any court, that establishes a prima facie claim that his right to effective, conflict-free counsel was violated." On 16 July 2013, the trial court entered an order granting defendant's request that an evidentiary hearing be held.

On 3 June 2014, the trial court held an evidentiary hearing for the purpose of considering the issues raised by defendant's motion for appropriate relief. On 12 May 2015, the trial court signed an order denying defendant's motion for appropriate relief. In its order, the trial court found as a fact that:

> 11.    At the MAR evidentiary hearing held June 3, 2014, Defendant introduced as evidence a page out of a legal notepad which contained handwritten notes, the contents of which were as follows:
>
> > 11/20/01
> > Derrick Speller
> > saw the whole thing
> > Demet had a .380 and a 9 mm.
> > He shot the guy and then ran out the back door
> > Somebody else shot at the guy with a chrome looking small gun but "I don't know who it was."
> > "I heard Demetrius shot him again outside but I don't know for sure."
> > "I think it was a 9 mm he (Demet) had outside.
> > --Never gave a statement to police because he hustled for Demet and Turnell and them [n*******] are lethal.
> > can you shoot me a couple of dollars

The handwritten notes had an exhibit stamp on them reading "Defendant's Exhibit 1." This is an indication that at trial Ms. Smallwood placed the exhibit stamp on the notes, marking them as Defendant's Exhibit 1, when she attempted to show the notes to Speller, but the undersigned would not allow her to do so. . . .

. . . .

13. Former NCPLS attorney Ravi Manne testified at the MAR evidentiary hearing that he . . . . located Defendant's MAR Exhibit 1 among Ms. Smallwood's files on Defendant's case.

. . . .

17. At the MAR evidentiary hearing, Defendant introduced an October 9, 2003 letter Ms. Smallwood sent the Office of Indigent Defense Services ("IDS"), which appeared with other documents admitted into evidence collectively as Defendant's MAR Exhibit 30. . . . Attached to the letter was an "Attorney Time Sheet," detailing in eight pages Ms. Smallwood's daily hours in Defendant's case. The first entry on the time sheet is for May 14, 2001, at which time Ms. Smallwood noted that she reviewed her appointment notice and talked to Defendant's family. There is no entry on the time sheet for November 20, 2001, the date listed on the handwritten notes purportedly from the conversation Ms. Smallwood had with Speller admitted at the MAR evidentiary hearing as Defendant's MAR Exhibit 1.

. . . .

19. At the MAR evidentiary hearing, W. Hackney High testified that he was appointed, along with Ms. Smallwood, to represent Defendant at trial. According to Mr. High, Ms. Smallwood was first-chair counsel, and he was second-chair counsel. In preparing for trial, Mr. High and Ms. Smallwood reviewed the State's witness list and together determined which attorney would cross-examine

which witness, depending on several factors including whether either attorney knew the witness. Mr. High and Ms. Smallwood had decided prior to trial that Mr. High would cross-examine Speller. A witness list Ms. Smallwood and Mr. High prepared from information conveyed to them by the State was admitted into evidence at the MAR evidentiary hearing as Defendant's MAR Exhibit 21. The list contained a notation indicating that "Hack," meaning Mr. High, was to cross-examine Speller.

20. According to Mr. High's MAR evidentiary hearing testimony, prior to trial he and Ms. Smallwood did not have a substantive conversation about Speller. Mr. High testified that he had some indication what Speller would testify to, but did not recall knowing specifically what he was going to say. Mr. High further testified that he was not aware of any conversation between Speller and Ms. Smallwood or any notes regarding a conversation between the two before trial. Mr. High testified that if he had the notes Ms. Smallwood would subsequently claim she had at trial, he would have provided them to his co[-]counsel. Moreover, Mr. High noted that if he had known about the notes when preparing for trial, he would have told Ms. Smallwood that she needed to cross-examine Speller, or they would have approached his cross-examination differently.

21. According to Mr. High's MAR evidentiary hearing testimony, when Speller's name was called at trial, Ms. Smallwood leaned over to Mr. High and said, "[D]on't worry about this one, I've got it." When Mr. High inquired as to why, Ms. Smallwood told him that he had spoken with Speller about the case and to let her handle it.

22. At the MAR evidentiary hearing, Mr. High testified that after District Attorney Asbell concluded her direct examination of Speller at trial, Ms. Smallwood left the courtroom during the recess and returned with some papers. Ms. Smallwood told Mr. High that she had talked to Speller prior to trial and that she had some notes she was going to use to cross-examine him. This was the first

time Mr. High heard of the notes. Mr. High testified that with Speller's cross-examination, Ms. Smallwood tried to establish that the events on the night in question were different than how Speller testified to them on direct examination. According to Mr. High, Ms. Smallwood had a piece of paper in her hand when she was cross-examining Speller. Mr. High testified that the decision to have Ms. Smallwood, rather than himself, cross-examine Speller was a strategic decision based on her having prior knowledge concerning the witness that Mr. High did not have.

23. . . . . Mr. High recalled that the [trial court] would not admit the notes because Speller had denied that the conversation which Ms. Smallwood was referring to during the cross-examination ever took place.

24. At the MAR evidentiary hearing, Mr. High could not positively identify Defendant's MAR Exhibit 1 as the piece of paper Ms. Smallwood had with her when she came back into the courtroom after the recess.

. . . .

27. At the MAR evidentiary hearing, Ms. Ruffin stated that she was aware that Speller had testified at defendant's trial and that his trial testimony was not helpful to Defendant's case. However, she was under the impression that Speller had information which would be helpful. Ms. Ruffin remembered being in the parking lot when Speller was speaking with Ms. Smallwood and that he indicated he could be helpful to the case, but she could not remember exactly what he said. Ms. Ruffin also remembered Ms. Smallwood telling her that Speller claimed that he was there the night of the murder, that he saw everything, and that he sought her out and indicated to her that he could help. Ms. Ruffin testified that Ms. Smallwood may have had a conversation with Speller other than the one in the parking lot.

28.     At the MAR evidentiary hearing, Ms. Ruffin identified the handwriting on Defendant's MAR Exhibit 1 as that of Ms. Smallwood.

29.     . . . . Ms. Ruffin testified that just because Defendant's MAR Exhibit 2 was found in a box of Defendant's case files did not mean they were related to Defendant; rather, they could have simply been notes taken on a notepad used in Defendant's case that were never torn out.

. . . .

31.     Defendant called neither Ms. Smallwood nor Speller as a witness at the MAR evidentiary hearing.

32.     Defendant presented no credible evidence that the conversation which Ms. Smallwood claimed she had with Speller ever took place.

33.     Defendant presented no credible evidence that Defendant's MAR Exhibit 1 contained, as he purported, notes taken contemporaneously with any conversation between Ms. Smallwood and Speller.

34.     Defendant presented no credible evidence that the purposed conversation between Ms. Smallwood and Speller took place on the date appearing on Defendant's MAR Exhibit 1, i.e., November 20, 2001.

35.     Given the evidence presented at the MAR evidentiary hearing, the Court cannot definitely find based only upon Defendant's MAR Exhibit 1 and Ms. Smallwood's cross-examination of Speller at Defendant's trial that Ms. Smallwood wrote the notes admitted as Defendant's MAR Exhibit 1 contemporaneously with any conversation she had with Speller; that the purported conversation took place on the date appearing on the exhibit, i.e., November 20, 2001; or that the conversation ever took place. The undersigned acknowledged that Ms. Ruffin did testify as to how she remembered, based upon Speller's attitude in the

parking lot and from talking to Ms. Smallwood, that Speller would be helpful to the case. However, other evidence indicated that the conversation purportedly memorialized in Defendant's MAR Exhibit 1 never took place. First, Ms. Smallwood did not inform her co-counsel Mr. High of her conversation with Speller, despite the fact that she and Mr. High had decided that he would be the attorney cross-examining Speller. In fact, Mr. High did not learn about the purported conversation until Speller testified at trial several days after the trial began. Secondly, despite keeping detailed notes of the time she spent working on Defendant's case, the time sheet Ms. Smallwood submitted to IDS for fee payment approval did not contain an entry for November 20, 2001, the date on Defendant's MAR Exhibit 1.

36. At trial, Ms. Smallwood attempted to show Speller what she identified as her notes from their conversation. The undersigned finds upon a review of the trial transcript that he would not allow Ms. Smallwood to do so because Speller had denied that the conversation which Ms. Smallwood was referring to during the cross-examination ever took place.

Based upon these findings of fact, the trial court concluded, in pertinent part, that defendant's ineffective assistance of counsel claim stemming from "Ms. Smallwood's failure to withdraw and testify" concerning her alleged prior conversation with Mr. Speller was "procedurally barred because [d]efendant was in a position to adequately raise it in *Hyman I*, but failed to do so." In the alternative, the trial court concluded that defendant's ineffective assistance of counsel claim lacked merit given that he "can demonstrate neither deficient performance nor prejudice in regard to trial counsel's failure to withdraw from representing [d]efendant and to testify as a witness regarding a prior conversation she had with Speller in which he made

remarks inconsistent with his direct trial testimony," citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674, 692 (1984). More specifically, the trial court concluded that it could not find that Ms. Smallwood's performance had been deficient because the trial court could not find, based upon the evidence contained in the transcript of defendant's trial and the evidence presented at the evidentiary hearing, that Ms. Smallwood's notes were written contemporaneously with any alleged conversation that Ms. Smallwood had with Mr. Speller, that the alleged conversation between Ms. Smallwood and Mr. Speller took place on 20 November 2001, or that the alleged conversation between Ms. Smallwood and Mr. Speller ever actually occurred. Finally, the trial court concluded that "[d]efendant can demonstrate neither deficient performance nor prejudice even assuming that the conversation which Ms. Smallwood claimed [that] she had with [Mr.] Speller took place" "because Ms. Smallwood would not have been allowed to testify to the substance of the conversation [that] she allegedly had with [Mr.] Speller had she withdrawn and testified at trial" or "introduced her notes of the conversation" "because [Mr.] Speller categorically denied having had the alleged conversation with Ms. Smallwood." In light of that fact, "any testimony by Ms. Smallwood would have been limited to impeaching only [Mr.] Speller's denial that any conversation took place, and would not have included the substance of the alleged conversation." For that reason, the trial court determined that "the absence of Ms. Smallwood's limited testimony did not prejudice [d]efendant, particularly in light of her effective cross-

examination of [Mr.] Speller" and the fact that "other evidence established defendant, not Demetrius Jordan, was the shooter."

In seeking relief from the trial court's order before the Court of Appeals, defendant argued that the trial court had erroneously relied upon the ineffective assistance of counsel test enunciated in *Strickland* and should, instead, have relied upon the test enunciated in *Cuyler v. Sullivan*, 446 U.S. 335, 100 S. Ct. 1708, 64 L. Ed. 2d 333 (1980). According to defendant, "the test for determining ineffective assistance of counsel based on an attorney's conflict of interest is whether 'an actual conflict of interest adversely affected his lawyer's performance,' " quoting *Sullivan*, 446 U.S. at 350, 100 S. Ct. at 1719, 64 L. Ed. 2d at 348. Defendant contended that the record developed at the evidentiary hearing demonstrated that Ms. Smallwood had been subject to an actual conflict of interest at the time that she represented defendant. In the alternative, defendant argued that, even if the trial court had properly relied upon the *Strickland*, rather than the *Cuyler*, test, the trial court's order should still be overturned because Ms. Smallwood's failure to withdraw from her representation of defendant in order to testify concerning her conversation with Mr. Speller constituted ineffective assistance of counsel, citing *Strickland*, 466 U.S. at 687, 694, 104 S. Ct. at 2064, 2068, 80 L. Ed. 2d at 693, 698. In support of this contention, defendant argued that Finding of Fact Nos. 32, 33, 34, and 35 lacked sufficient evidentiary support in light of the overwhelming and unrebutted evidence tending to show that the alleged conversation between Ms. Smallwood and Mr.

Speller actually took place. In addition, defendant contends that Ms. Smallwood's testimony concerning Mr. Speller's statements would have been admissible given that "[e]xtrinsic evidence is admissible to prove a witness's prior inconsistent statement, where the inconsistency goes to a material issue," citing *State v. Green*, 296 N.C. 183, 192-93, 250 S.E.2d 197, 203 (1978). Finally, defendant argued that, to the extent that defendant was procedurally barred from raising the ineffective assistance of counsel claim asserted in his motion for appropriate relief because he could have asserted it in *Hyman I*, his failure to do so should be excused because he had received ineffective assistance from his appellate counsel.

The State, on the other hand, argued that the trial court had correctly concluded that defendant's ineffective assistance of trial counsel claim was procedurally barred given that, even though defendant was in a position to adequately raise the claim in question on direct appeal, he had failed to do so and had opted, instead, to argue "that the trial court [had] erred in failing to conduct a hearing when it became aware of a conflict of interest." In addition, the trial court correctly rejected defendant's ineffective assistance of counsel claim on the merits given the existence of sufficient record evidence to support the trial court's determination that the alleged conversation between Ms. Smallwood and Mr. Speller never took place and given that the trial court had correctly determined that, even if the conversation in question had occurred, Ms. Smallwood would not have been allowed to testify to the substance of the alleged conversation before the jury.

After summarizing the procedural history of the case, the Court of Appeals rejected the State's contention that defendant's ineffective assistance of counsel claim was procedurally barred on the grounds that, "[w]hile perhaps unartfully, defendant adequately raised the exculpatory witness claim when he was first in a position to do so" by arguing in *Hyman I* that "[d]efense counsel Smallwood had a conflict of interest in that she was in possession of information which could be used to impeach Derrick Speller, one of the State's most crucial witnesses," and that, "[a]lthough she chose to remain as counsel and used the information she acquired in her representation of Speller to impeach his testimony, rather than withdrawing as counsel and testifying as a witness, it is not at all clear that this was the correct decision." *State v. Hyman*, ___ N.C. App. ___, ___, 797 S.E.2d 308, 317 (2017) (*Hyman III*). Secondly, the Court of Appeals held that, the trial court's findings to the contrary notwithstanding, defendant had proved by a preponderance of the evidence that "[Ms.] Smallwood was privy to a conversation in which [Mr.] Speller identified the shooter as someone other than defendant" and that the presentation of evidence concerning this conversation "would have been both relevant and material had it been offered at trial." *Id*. at ___, 797 S.E.2d at 318 (citing N.C.G.S. § 15A-1420(c)(5) (2015)). For that reason, the Court of Appeals held that the trial court's findings of fact to the effect that the alleged conversation between Ms. Smallwood and Mr. Speller never took place "were not germane to the adjudication of defendant's exculpatory witness claim" and did

not, for that reason, "support its conclusion that defendant's claim is meritless for lack of evidentiary support." *Id*. at ___, 797 S.E.2d at 318.

After making these preliminary determinations, the Court of Appeals proceeded to consider the merits of defendant's ineffective assistance of counsel claim. As an initial matter, the Court of Appeals determined, in reliance upon this Court's decision in *State v. Phillips*, 365 N.C. 103, 711 S.E.2d 122 (2011), *cert. denied*, 565 U.S. 1204, 132 S. Ct. 1541, 182 L. Ed. 2d 176 (2012), that "*Strickland* provides an adequate framework to review defendant's exculpatory witness claim." *Id*. at ___, 797 S.E.2d at 320 (citing *Phillips*, 365 N.C. at 121-22, 711 S.E.2d at 137); *see also id*. at ___, 797 S.E.2d at 319-20 (quoting *Phillips*, 365 N.C. at 121-22, 711 S.E.2d at 137 (explaining that "[t]he purpose of our *Holloway* and *Sullivan* exceptions from the ordinary requirements of *Strickland* . . . is . . . to apply needed prophylaxis in situations where *Strickland* itself is evidently inadequate to assure vindication of the defendant's Sixth Amendment right to counsel" (first ellipsis in original) (quoting *Mickens v. Taylor*, 535 U.S. 162, 176, 122 S. Ct. 1237, 1246, 152 L. Ed. 2d 291, 307 (2002)), and that, "[b]ecause the facts do not make it impractical to determine whether defendant suffered prejudice, we conclude that *Strickland*'s framework is adequate to analyze defendant's issue")). According to the Court of Appeals, since "the facts of this case do not 'make it impractical to determine whether defendant suffered prejudice,' " *id*. at ___, 797 S.E.2d at 320 (quoting *Phillips*, 365 N.C. at 122,

711 S.E.2d at 137), the *Strickland* framework is adequate "to evaluate defendant's exculpatory witness claim," *id.* at \_\_\_, 797 S.E.2d at 320.

In addition, the Court of Appeals held that, contrary to the result reached by the trial court, Ms. "Smallwood's testimony, had it been offered, would have been admissible to impeach [Mr.] Speller by showing that he had previously identified [Mr.] Jordan as the shooter," which "was a material issue in defendant's murder trial." *Id.* at \_\_\_, 797 S.E.2d at 320; *see State v. Stokes*, 357 N.C. 220, 226, 581 S.E.2d 51, 55 (2003) (stating that, "when a witness is confronted with prior statements that are inconsistent with the witness' testimony, the witness' answers are final as to collateral matters, but where the inconsistencies are material to the issue at hand in the trial, the witness' testimony may be contradicted by other testimony"). In addition, even if testimony concerning the statements that Mr. Speller allegedly made to Ms. Smallwood concerned a collateral matter, her "testimony would have also been admissible to show [Mr.] Speller's bias or interest in the trial." *Id.* at \_\_\_, 797 S.E.2d at 320; *see Green*, 296 N.C. at 193, 250 S.E.2d at 203 (stating that, if the cross-examination relates to a collateral matter, "but tends to show bias, motive, or interest of the witness, the [examiner] must first confront the witness with the 'prior statement so that he may have an opportunity to admit, deny or explain it.' ").

The Court of Appeals further concluded that, "[w]hile the admissibility of [Ms.] Smallwood's testimony does not in and of itself establish deficient performance, the circumstances surrounding her decision to remain as counsel leads us to that

conclusion." *Id*. at ___, 797 S.E.2d at 321. More specifically, the Court of Appeals

noted that "[Ms.] Smallwood was the only witness to [Mr.] Speller's prior inconsistent

statement" and determined that, "after her ineffective cross-examination, she became

a necessary witness at trial with a duty to withdraw." *Id*. at ___, 797 S.E.2d at 321

(citation omitted). In addition, the Court of Appeals concluded that defendant was

prejudiced by Ms. Smallwood's failure to withdraw as one of defendant's trial counsel

and testify as a witness on defendant's behalf because "she could have testified that

[Mr.] Speller, one of only two key witnesses for the State, had previously told her that

it was [Mr.] Jordan—not defendant—who shot [Mr.] Bennett," *id*. at ___, 797 S.E.2d

at 321; because "[s]he could have attacked [Mr.] Speller's credibility through his prior

inconsistent statement and evidence of his interest in the trial," *id*. at ___, 797 S.E.2d

at 321; and because "[Ms.] Smallwood's testimony could have rehabilitated her own

credibility as an advocate at trial." *Id*. at ___, 797 S.E.2d at 322.

In a dissenting opinion, Judge Dillon concluded that the trial court had

properly denied defendant's motion for appropriate relief on the grounds that the

ineffective assistance of counsel claim that defendant had asserted in his motion for

appropriate relief was procedurally barred. *Id*. at ___, 797 S.E.2d at 323 (Dillon, J.,

dissenting). More specifically, Judge Dillon asserted that defendant's brief before the

Court of Appeals in *Hyman I* "*failed* to make an exculpatory witness claim" and, even

if the brief "*did* raise an exculpatory witness claim, [d]efendant is still procedurally

barred because he failed to raise it through a petition for rehearing to [the Court of

Appeals] following the issuance of our prior opinion, which ostensibly ignored his claim." *Id*. at ___, 797 S.E.2d at 323 (citing N.C. R. App. P. 31 (providing that a party may file a petition for rehearing arguing "the points of fact or law that, in the opinion of the petitioner, the [Court of Appeals] overlooked or misapprehended" "contain[ing] such argument in support of the petition as petitioner desires to present" (first alteration in *Hyman III*))). According to Judge Dillon, "[d]efendant has failed to establish that, 'more likely than not, but for the error, no reasonable fact finder would have found the defendant guilty of the underlying offense,' " *id*. at ___, 797 S.E.2d at 323 (quoting N.C.G.S. § 15A-1419(e)(1) (2015)), given his failure to "present evidence to show exactly what Ms. Smallwood would have said had she taken the stand," *id*. at ___, 797 S.E.2d at 323. In Judge Dillon's opinion, defendant did not establish that there was a reasonable probability that a different result would have occurred had Ms. Smallwood withdrawn as counsel and attempted to testify as a witness or had defendant's appellate counsel sought rehearing with respect to his exculpatory witness claim. *Id*. at ___, 797 S.E.2d at 323. Judge Dillon believed that, in order to establish the necessary prejudice, defendant would have had "to show exactly what the substance of Ms. Smallwood's testimony would have been," *id*. at ___, 797 S.E.2d at 323, and failed to do so at the hearing held for the purpose of considering the issues raised by defendant's motion for appropriate relief, *id*. at ___, 797 S.E.2d at 323-24. Finally, Judge Dillon concluded that the copy of Ms. Smallwood's notes of her alleged conversation with Mr. Speller was not admissible to show the contents of Ms.

Smallwood's testimony had she withdrawn from her representation of defendant in order to testify. *Id*. at ___, 797 S.E.2d at 324. This Court undertook review of the Court of Appeals' decision in light of Judge Dillon's dissenting opinion and our decision to allow the State's petition seeking the issuance of a writ of certiorari authorizing review of issues in addition to those addressed in Judge Dillon's dissent.

In seeking to persuade us to reverse the Court of Appeals' decision, the State argues that, in order to establish that his ineffective assistance of counsel claim had merit, defendant had to establish that the conversation that allegedly occurred between Ms. Smallwood and Mr. Speller actually took place and the content of the testimony that Ms. Smallwood would have given had she withdrawn from her representation of defendant and testified. According to the State, the trial court's finding that defendant "presented no credible evidence that the conversation which Ms. Smallwood claimed she had with [Mr.] Speller ever took place" had adequate evidentiary support. In view of the fact that the record contains no evidence concerning the substance of Ms. Smallwood's potential testimony, the State claims that a reviewing court lacks the ability to determine whether Ms. Smallwood's testimony would have been admissible or affected the jury's deliberations at trial.

The State contends that defendant failed to show either deficient performance or prejudice as required by *Strickland*. According to the State, defendant did not establish any deficient performance on Ms. Smallwood's part given his failure to "present any evidence as to what Ms. Smallwood would have testified to had she

withdrawn and taken the stand" or to present any "credible evidence establishing [that] Ms. Smallwood's conversation with [Mr.] Speller ever took place." In the State's view, even if Ms. Smallwood had withdrawn as one of defendant's trial counsel and testified, she "could not have testified to the content of her notes," citing *State v. Moore*, 275 N.C. 198, 213-14, 166 S.E.2d 652, 662-63 (1969) (determining that extrinsic evidence of a witness's prior inconsistent statement, which constituted double hearsay, was not admissible to impeach that witness after the witness denied making the statement). Similarly, the State argued that defendant was not prejudiced by Ms. Smallwood's failure to withdraw as one of his trial counsel and to testify on his behalf even if she was entitled to testify to the entirety of her conversation with Mr. Speller as reflected in the notes admitted into evidence at the hearing held with respect to defendant's motion for appropriate relief given that, even though the questions that Ms. Smallwood posed to Mr. Speller on cross-examination were not evidence, the posing of those questions necessarily created the impression that Mr. Speller had made statements to Ms. Smallwood that were inconsistent with Mr. Speller's trial testimony. In addition, the State contends that, even if Ms. Smallwood had withdrawn and testified, there is no way to know what impact her testimony would have had upon the jury. The State contends that the record contained ample support for the jury's decision to convict defendant, including testimony from additional witnesses aside from Mr. Speller and evidence casting doubt upon the credibility of the witnesses upon whose testimony defendant relied.

Finally, the State contends that the trial court correctly determined that the ineffective assistance of counsel claim asserted in defendant's motion for appropriate relief was procedurally barred. After acknowledging that defendant had listed a claim like the one upon which he now relies in the record on appeal submitted for consideration by the Court of Appeals in *Hyman I*, the State points out that defendant did not argue the merits of this claim in his brief and had argued, instead, that the trial court had erred by failing to conduct a hearing upon learning that Ms. Smallwood had previously represented Mr. Speller. Moreover, the State contends that defendant failed to establish any justification for a decision to excuse the procedural bar to which defendant's claim was subject.

In seeking to persuade us to uphold the Court of Appeals' decision, defendant contends that the extent to which the alleged conversation between Mr. Speller and Ms. Smallwood actually occurred is irrelevant to the validity of defendant's ineffective assistance of counsel claim given that the jury, rather than the trial court, bore ultimate responsibility for determining the credibility of Ms. Smallwood's testimony, citing *State v. Scott*, 323 N.C. 350, 353, 372 S.E.2d 572, 575 (1988) (explaining that "[t]he credibility of the witnesses and the weight to be given their testimony is exclusively a matter for the jury"). In addition, defendant contends that, even if the extent to which the conversation between Mr. Speller and Ms. Smallwood actually occurred is relevant to the issues that are before the Court in this case, the substance of that conversation was established in the record developed at trial and at the

hearing held for the purpose of considering defendant's motion for appropriate relief. According to defendant, Ms. Smallwood's testimony at the remand hearing established that she could have testified about the prior inconsistent statements that Ms. Speller made to her had she withdrawn from her representation of defendant for the purpose of testifying on defendant's behalf. More specifically, defendant notes that Ms. Smallwood testified at the remand hearing that she took contemporaneous notes of her conversation with Mr. Speller and described the substance of the information contained in those notes, which were found in Ms. Smallwood's file concerning defendant's case and admitted into evidence at the hearing held for the purpose of considering the issues raised by defendant's motion for appropriate relief. In addition, defendant notes that the questions that Ms. Smallwood posed to Mr. Speller on cross-examination at trial consisted of a "nearly verbatim" recitation of the information contained in the notes admitted into evidence at the hearing held in connection with defendant's motion for appropriate relief and that Ms. Ruffin testified to her understanding that Mr. Speller had stated during a conversation between Ms. Smallwood and Mr. Speller that he could be helpful to defendant's defense. Although Ms. Smallwood's time sheet did not indicate that she had spent any time working on defendant's case on 20 November 2001, her time sheet did indicate that Ms. Smallwood spent time working on defendant's case on 30 November 2001, a fact that suggests that a recordkeeping error might have occurred.

Defendant maintains that, in view of the fact that Ms. Smallwood was the only witness to Mr. Speller's prior inconsistent statements concerning the identity of the individual that murdered Mr. Bennett and the fact that Mr. Speller's prior inconsistent statements concerned facts that were material to the issue of defendant's guilt, Ms. Smallwood's failure to withdraw from her representation of defendant and to testify on his behalf constituted deficient performance. Ms. Smallwood's testimony concerning her conversation with Mr. Speller would not have amounted to an attempt "to prove the truth of the matter asserted," quoting N.C.G.S. § 8C-1, Rule 701. Instead, Ms. Smallwood's testimony concerning her conversation with Mr. Speller, which included an account of the shooting for which defendant was on trial, would have been admissible to impeach Mr. Speller's testimony concerning a material issue of fact. In defendant's view, the fact that this case was a close one that hinged upon the credibility of the State's witnesses demonstrates that Ms. Smallwood's failure to withdraw from her representation of defendant and to testify concerning her conversation with Mr. Speller prejudiced defendant's chances for a more favorable outcome at trial.

Finally, defendant argues that the claim that he had asserted in his motion for appropriate relief was not procedurally barred. According to defendant, a fair reading of the argument that he advanced before the Court of Appeals in *Hyman I* demonstrates that the claim asserted in his motion for appropriate relief was adequately presented for the Court of Appeals' consideration. The brief that

defendant submitted to the Court of Appeals in *Hyman I* summarized several conflict of interest cases, described Ms. Smallwood's conflict of interest as involving her "possession of information which could be used to impeach" Mr. Speller, and stated that, "[w]here an actual conflict exists which adversely affects counsel's performance, a new trial is necessary."

According to well-established North Carolina law, appellate courts review trial court orders deciding motions for appropriate relief "to determine 'whether the findings of fact are supported by evidence, whether the findings of fact support the conclusions of law, and whether the conclusions of law support the order entered by the trial court.' " *State v. Frogge,* 359 N.C. 228, 240, 607 S.E.2d 627, 634 (2005) (quoting *State v. Stevens*, 305 N.C. 712, 720, 291 S.E.2d 585, 591 (1982)). "[T]he trial court's findings of fact 'are conclusive on appeal if supported by competent evidence, even if the evidence is conflicting.'" *State v. Buchanan*, 353 N.C. 332, 336, 543 S.E.2d 823, 826 (2001) (quoting *State v. Brewington*, 352 N.C. 489, 498, 532 S.E.2d 496, 501 (2000), *cert. denied*, 531 U.S. 1165, 121 S. Ct. 1126, 148 L. Ed. 2d 992 (2001)). "If no exceptions are taken to findings of fact [made in a ruling on a motion for appropriate relief], such findings are presumed to be supported by competent evidence and are binding on appeal." *State v. Mbacke,* 365 N.C. 403, 406, 721 S.E.2d 218, 220 (alteration in original) (quoting *State v. Baker*, 312 N.C. 34, 37, 320 S.E.2d 670, 673 (1984)), *cert. denied*, 568 U.S. 864, 133 S. Ct. 224, 184 L. Ed. 2d 116 (2012).

Conclusions of law, on the other hand, are fully reviewable. *State v. Bush*, 307 N.C. 152, 168, 297 S.E.2d 563, 573 (1982) (citation omitted).

As an initial matter, we must address the validity of the State's contention that the claim asserted in defendant's motion for appropriate relief is procedurally barred pursuant to N.C.G.S. § 15A-1419(a)(3), which provides that a claim asserted in a motion for appropriate relief must be denied if, "[u]pon a previous appeal, the defendant was in a position to adequately raise the ground or issue underlying the present motion but did not do so." N.C.G.S. § 15A-1419(a)(3) (2017). As we have previously indicated, N.C.G.S. § 15A-1419(a)(3) "is not a general rule that any claim not brought on direct appeal is forfeited on state collateral review" and requires the reviewing court, instead, "to determine whether the particular claim at issue could have been brought on direct review." *State v. Fair*, 354 N.C. 131, 166, 557 S.E.2d 500, 525 (2001) (quoting *McCarver v. Lee*, 221 F.3d 583, 589 (4th Cir. 2000), *cert. denied*, 531 U.S. 1089, 121 S. Ct. 809, 148 L. Ed. 2d 694 (2001)), *cert. denied*, 535 U.S. 1114, 122 S. Ct. 2332, 153 L. Ed. 2d 162 (2002). "[Ineffective assistance of counsel] claims brought on direct review will be decided on the merits when the cold record reveals that no further investigation is required, i.e., claims that may be developed and argued without such ancillary procedures as . . . an evidentiary hearing." *Id.* at 166, 557 S.E.2d at 524 (citations omitted). Although, "to avoid procedural default under N.C.G.S. § 15A-1419(a)(3), defendants should necessarily raise those [ineffective assistance of counsel] claims on direct appeal that are apparent from the record,"

"defendants likely will not be in a position to adequately develop many [ineffective assistance of counsel] claims on direct appeal." *Id.* at 167, 557 S.E.2d at 525 (citing *McCarver*, 221 F.3d at 589-90). As a result, in order to be subject to the procedural default specified in N.C.G.S. § 15A-1419(a)(3), the direct appeal record must have contained sufficient information to permit the reviewing court to make all the factual and legal determinations necessary to allow a proper resolution of the claim in question.

A careful review of the record demonstrates that defendant was not in a position to adequately raise the ineffective assistance of counsel claim asserted in his motion for appropriate relief on direct appeal.[6] "A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction . . . has two components." *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064, 80 L. Ed. 2d at 693.

---

[6] Although the Court of Appeals held that defendant did, in fact, adequately assert his ineffective assistance of counsel claim on direct appeal in *Hyman I*, we do not find that argument persuasive. The mere fact that defendant stated that Ms. Smallwood labored under a conflict of interest at defendant's trial by virtue of the fact that she allegedly possessed information that could be used to impeach Mr. Speller and pointed out that "it [was] not at all clear" that Ms. Smallwood's decision "to remain as counsel and use[ ] the information [that] she acquired in her representation of [Mr.] Speller to impeach his testimony, rather than withdrawing as counsel and testifying as a witness," "was the correct decision" cannot be understood as the assertion of an explicit claim that Ms. Smallwood's failure to withdraw from her representation of defendant and to take the stand as a witness in his behalf constituted ineffective assistance of counsel given the well-established legal principle that "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691, 104 S. Ct. at 2066-67, 80 L. Ed. 2d at 696 (citation omitted). As a result, while we agree with the Court of Appeals that the ineffective assistance of counsel claim that defendant raised in his motion for appropriate relief is not procedurally barred by N.C.G.S. § 15A-1419(a)(3), we reach that result for a different reason than that found persuasive by the Court of Appeals.

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial[.]

*Id.* at 687, 104 S. Ct. at 2064, 80 L. Ed. 2d at 693. As a result, in order to successfully challenge the trial court's judgment on the basis of the ineffective assistance of counsel claim asserted in his motion for appropriate relief, defendant would have had to establish that Ms. Smallwood was in a position to provide favorable testimony on defendant's behalf, that her failure to withdraw from her representation of defendant in order to testify on his behalf constituted deficient performance, and that, had Ms. Smallwood acted as defendant contends that she should have acted, there is a reasonable probability that defendant would have been found not guilty of the first-degree murder of Mr. Bennett.

The record developed at trial did not contain any information affirmatively tending to show that the alleged conversation between Ms. Smallwood and Mr. Speller actually occurred or whether Ms. Smallwood had a strategic or tactical reason for failing to withdraw from her representation of defendant and testify before the jury concerning the statements that Mr. Speller allegedly made to her. Although the trial court ultimately found that Ms. Smallwood and Mr. Speller never had the conversation upon which defendant's ineffective assistance of counsel claim relies, the fact that the trial court ultimately rejected this aspect of defendant's claim should

not cause us to overlook the fact that defendant had no hope of making a viable showing to the contrary based upon the evidentiary record developed at trial, which consisted of nothing more than Mr. Speller's denial that the alleged conversation had ever occurred. Similarly, while defendant made no effort to elicit testimony from Ms. Smallwood concerning the extent, if any, to which she had a strategic or tactical reason for refraining from withdrawing from her representation of defendant and testifying on his behalf, the extent to which her acts or omissions had such a strategic or tactical motivation was a relevant issue about which the trial record is completely silent. Finally, the record presented for consideration by the Court of Appeals in *Hyman I* is devoid of any affirmative evidence concerning the nature of the statements that Mr. Speller allegedly made to Ms. Smallwood or the content of the testimony that Ms. Smallwood would have given had she withdrawn from her representation of defendant and testified on defendant's behalf. Although the trial transcript does contain the questions that Ms. Smallwood posed to Mr. Speller on cross-examination at defendant's trial and although these questions do track the contents of the notes that defendant introduced into evidence at the hearing held for the purpose of considering defendant's motion for appropriate relief, the fact that Ms. Smallwood posed certain questions to Mr. Speller on cross-examination does not constitute the existence of evidence sufficient to support a finding of fact concerning the contents of the testimony that Ms. Smallwood would have been able to deliver had she withdrawn from her representation of defendant and testified on his behalf.

As a result, we hold that defendant was not, in fact, in a position to adequately raise his ineffective assistance of counsel claim on direct appeal in *Hyman I* and is not, for that reason, subject to the procedural bar created by N.C.G.S. § 15A-1419(a)(3) with respect to the ineffective assistance of counsel claim that is before us in this case.[7]

In view of our determination that defendant's ineffective assistance of counsel claim is not procedurally barred pursuant to N.C.G.S. § 15A-1419(a)(3), we must next address the merits of defendant's ineffective assistance of counsel claim. At the beginning of our analysis of this issue, we must acknowledge that the trial court determined that defendant failed to establish that the conversation between Ms. Smallwood and Mr. Speller, upon which defendant's ineffective assistance of counsel claim rests, actually occurred. More specifically, the trial court found as a fact that defendant presented no credible evidence during the hearing held for the purpose of

---

[7] The dissenting judge in the Court of Appeals determined that defendant was procedurally barred from raising the ineffective assistance of counsel claim set out in his motion for appropriate relief claim because, even if defendant had raised that claim before the Court of Appeals, as the majority held that he had, defendant "is still procedurally barred because he failed to raise it through a petition for rehearing to this Court following the issuance of our prior opinion, which ostensibly ignored his claim," citing N.C. R. App. P. 31 (authorizing a party to "file a petition for rehearing after an opinion to argue 'the points of fact or law that, in the opinion of the petitioner, the [Court of Appeals] overlooked or misapprehended'"). *Hyman III*, ___ N.C. App. at ___, 797 S.E.2d at 323. As a result of the fact that rehearing petitions pursuant to N.C. Rule of Appellate Procedure 31 are only available in civil cases, defendant had no right to seek rehearing of the Court of Appeals' decision in *Hyman I* or *Hyman II* and cannot be held to have been subject to a procedural bar for failing to file an unauthorized rehearing petition. Moreover, nothing in N.C.G.S. § 15A-1419(a)(3) provides any support for a determination that a failure to seek rehearing following an appellate decision works any sort of procedural bar. As a result, the fact that defendant did not file any sort of rehearing petition with the Court of Appeals following its decisions in *Hyman I* and *Hyman II* has no bearing on the proper resolution of the procedural default issue that is before us in this case.

considering defendant's motion for appropriate relief that "Ms. Smallwood wrote the notes admitted as Defendant's MAR Exhibit 1 contemporaneously with any conversation she had with Speller; that the purported conversation took place on the date appearing on the exhibit, i.e., November 20, 2001; or that the conversation ever took place."

"A defendant who seeks relief by motion for appropriate relief must show the existence of the asserted grounds for relief," N.C.G.S. § 15A-1420(c)(6) (2017), with "the moving party ha[ving] the burden of proving by a preponderance of the evidence every fact essential to support the motion," *id.* § 15A-1420(c)(5) (2017). As a result, in order to sustain the ineffective assistance of counsel claim asserted in his motion for appropriate relief, defendant was required to persuade the trial court, by a preponderance of the evidence, of the nature and extent of the testimony that Ms. Smallwood would have provided had she withdrawn from her representation as defendant's trial counsel and testified on defendant's behalf.

As the record clearly reflects, the trial court found that the alleged conversation between Ms. Smallwood and Mr. Speller upon which defendant's ineffective assistance of counsel claim rests never occurred. Although defendant contends that the trial court's findings to this effect lack adequate evidentiary support,[8] we believe that the record contains adequate evidentiary support for the

---

[8] The record does, of course, contain ample evidence from which a contrary finding could have been made, including, but not limited to, the content of the questions that Ms. Smallwood posed to Mr. Speller on cross-examination, the content of the notes found in Ms.

trial court's findings. We note, as an initial matter, that, while defendant introduced a document consisting of notes written in Ms. Smallwood's handwriting dated 20 November 2001, neither Ms. Smallwood nor anyone else ever testified that a conversation of the nature allegedly memorialized in these notes actually occurred. Although Ms. Ruffin was able to verify that Mr. Speller and Ms. Smallwood had a conversation[9] and that Ms. Smallwood believed that Mr. Speller would be helpful to defendant's defense, Ms. Ruffin acknowledged that she did not hear Mr. Speller make the statements recounted in the notes that defendant introduced during the proceedings before the trial court. As a related matter, the fact that the notes in question were found in Ms. Smallwood's trial files, while suggestive of a conversation, does not, without more, tend to establish that a conversation of the type upon which defendant's ineffective assistance of counsel claim hinges ever actually occurred. On the other hand, the fact that Ms. Smallwood and Mr. High had decided before trial

Smallwood's file concerning defendant's case, the resemblance of the notes that Ms. Smallwood utilized during her cross-examination of Mr. Speller at trial to the document found in Ms. Smallwood's file, and Ms. Smallwood's testimony at the remand hearing held as a result of the Court of Appeals' decision in *Hyman I*. However, the fact that such evidence exists has little to no bearing on the issue that is actually before us, which is whether the findings of fact that the trial court actually did make had sufficient evidentiary support. Although the members of this Court might have found the facts differently than the trial court did, the trial judge, rather than an appellate court, is responsible for resolving factual disputes in the record given the trial judge's superior opportunity to make such determinations.

[9] The conversation that Ms. Ruffin described in her testimony before the trial court, which allegedly took place in the parking lot outside the law office that she and Ms. Smallwood utilized, appears to be a different conversation than the one which allegedly took place in Ms. Smallwood's office, during which Mr. Speller allegedly told Ms. Smallwood that Mr. Bennett was killed by Mr. Jordan, rather than defendant.

that Mr. High would assume responsibility for cross-examining Mr. Speller, the fact that one of the criteria that Ms. Smallwood and Mr. High utilized in determining which of them would cross-examine each of the State's witnesses was the extent to which either Ms. Smallwood or Mr. High knew the witness, and the fact that Ms. Smallwood had not told Mr. High that she had had a conversation with Mr. Speller at any point prior to the time that Mr. Speller took the witness stand at defendant's trial raises questions about the validity of defendant's claim that the alleged conversation between Ms. Smallwood and Mr. Speller ever actually occurred. The trial court's finding that the alleged conversation did not, in fact, take place is also supported by the fact that the time records that Ms. Smallwood submitted to Indigent Defense Services at the time that she sought payment for the services that she provided during the course of her representation of defendant contained no indication that she did any work on defendant's behalf on the date shown on the notes that Ms. Smallwood allegedly made during her conversation with Mr. Speller. Finally, Mr. Speller adamantly insisted during his trial testimony that he never made any statement to Ms. Smallwood consistent with the information contained in the handwritten notes found in Ms. Smallwood's file relating to defendant's case. As a result, for all of these reasons, we conclude that the record contains sufficient evidence to support the trial court's findings of fact to the effect that the alleged conversation between Ms. Smallwood and Mr. Speller never occurred.

Although the Court of Appeals was correct in pointing out that defendant "was not required to 'definitely' prove that [Ms.] Smallwood transcribed the handwritten notes contemporaneously with any conversation she had with [Mr.] Speller, that the purported conversation took place on 20 November 2001, or that the conversation ever took place," ___ N.C. App. at ___, 797 S.E.2d at 318 (majority), we do believe that the viability of defendant's ineffective assistance of counsel claim hinges upon the extent to which Ms. Smallwood was in a position to properly testify that Mr. Speller made the statements attributed to him in the notes that were admitted into evidence at the hearing held in connection with defendant's motion for appropriate relief. In the event that the conversation between Ms. Smallwood and Mr. Speller never happened, Ms. Smallwood could not have properly contradicted Mr. Speller's trial testimony from the witness stand because any testimony that she might have given to that effect would have been perjured. Similarly, in the event that the notes upon which defendant relies for the purpose of showing the contents of the testimony that Ms. Smallwood would have been able to deliver had she withdrawn from her representation of defendant and testified on his behalf did not reflect an actual conversation between Ms. Smallwood and Mr. Speller, they cannot serve as a basis for showing the contents of the testimony that she would have been able to provide had she acted in accordance with the theory that underlies the ineffective assistance of counsel claim asserted in defendant's motion for appropriate relief. Although we agree with defendant's contention that the mere fact that Ms. Smallwood and Mr.

Speller disagree about the extent to which Mr. Speller made certain statements to Ms. Smallwood concerning the events that happened at the time of Mr. Bennett's death does not, without more, suffice to preclude the allowance of defendant's motion for appropriate relief, the complete absence of any testimony from Ms. Smallwood or some other witness to the effect that the conversation in question did occur and describing the contents of the conversation that occurred at that time, coupled with the existence of ample evidentiary support for the trial court's determination, based upon its observations during the original trial and subsequent hearings, that the alleged conversation never took place, suffices to support the trial court's decision to deny defendant's motion for appropriate relief. As a result, for all of these reasons, we affirm the Court of Appeals' decision that defendant's ineffective assistance of counsel claim is not procedurally barred pursuant to N.C.G.S. § 15A-1419(a)(3), reverse the Court of Appeals' decision to overturn the trial court's order denying defendant's motion for appropriate relief, and remand this case to the Court of Appeals for consideration of remaining challenges to the trial court's order denying defendant's motion for appropriate relief.

AFFIRMED, IN PART; REVERSED, IN PART; AND REMANDED.