An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-661

Filed 16 July 2025

Guilford County, Nos. 14 CRS 24727, 14 CRS 91914

STATE OF NORTH CAROLINA

v.

GARRY JOSEPH GUPTON, Defendant.

Appeal by Defendant from order entered 5 November 2021 by Judge R. Stuart Albright in Guilford County Superior Court. Heard in the Court of Appeals 13 May 2024.

*Attorney General Jeff Jackson, by Special Deputy Attorney General Teresa M. Postell, for the State.*

*Attorney Kristen L. Todd, for defendant-appellant.*

STADING, Judge.

Garry Joseph Gupton ("Defendant") appeals from an order summarily denying his motion for appropriate relief ("MAR"), denying his postconviction motion to test his blood for controlled substances, and denying his *ex parte* motion for State funding to hire psychiatric and fire experts. On appeal, Defendant contends the MAR court

erred in denying his MAR without conducting an evidentiary hearing, erred in concluding his MAR was procedurally barred under N.C. Gen. Stat. § 15A-1419(a)(3) (2023), and erred in denying his postconviction and *ex parte* motions. After careful consideration, we affirm the trial court's order.

## I.    Background

On 15 December 2014, a Guilford County grand jury returned a true bill of indictment charging Defendant with first-degree murder and first-degree arson. Defendant's trial commenced on 2 October 2017, and the evidence tended to show on the night of 8 November 2014, Defendant went to Chemistry Nightclub (the "Club") in Greensboro. Defendant arrived around 11:00 p.m. and spent the majority of his time talking with various Club attendees and consuming alcohol. At some point late into the night, Defendant approached the bar where he first encountered Stephen White ("Mr. White"). Once the Club closed, Mr. White offered for Defendant to ride in the taxi with him. Defendant agreed, retrieved diabetes medication from his own car, and left in a taxi with Mr. White.

The taxi first drove Defendant and Mr. White to a gas station, where Mr. White purchased condoms. The taxi then dropped them off at a hotel called the Battleground Inn. Upon arrival, the hotel clerk noticed Mr. White appeared to be "walk[ing] kind of slowly." Defendant and Mr. White went to room 417 together. Around 4:15 a.m., a guest who was staying on the fourth floor called the hotel clerk and reported he heard "loud noises" and "hollering." The hotel clerk investigated the

disturbance, but Defendant stepped out of the elevator before the hotel clerk could take it to the fourth floor. Upon stepping out of the elevator, Defendant knocked over various items in the lobby, yelled at the hotel clerk, and walked out of the front door. In response, the hotel clerk called 911 and locked the door so Defendant could not re-enter the premises. After the hotel clerk locked the door, the smoke alarm in the hotel started to go off. Once the hotel clerk reached the fourth floor, he noticed smoke emanating from room 417. After multiple attempts to open the door, the hotel clerk called 911 again and reported a fire in room 417.

Law enforcement officers from the Greensboro Police Department arrived at the scene where they observed Defendant outside the front door on his hands and knees "screaming and crying." One of the police officers, T.D. Dell, testified Defendant was "yelling, screaming, kind of blubbering, talking about how he was going to die tonight." Officer Dell further testified, Defendant "began to cry and mumble about Jihadis and Sunnis and that Jihadis were inside the building with bombs. And he kept yelling that they're going to blow the place up." The police officers handcuffed Defendant and placed him in the back of a patrol vehicle. Due to Defendant's "level of agitation," a paramedic from Guilford County Emergency Services "sedated" Defendant with midazolam before he was transported from the scene to the hospital. A physician testified Defendant tested positive for alcohol, amphetamines, and benzodiazepines.

Firefighters from the Greensboro Fire Department went to the fourth floor of

the Battleground Inn. From room 417, Firefighter Michael Page saw "smoke coming out from floor to ceiling." Upon entering room 417, Firefighter Page observed Mr. White "face down," covered in "debris" and "furniture." Several of the firefighters rolled Mr. White over and carried him out of the Battleground Inn. Zachary Shelton, the senior paramedic on scene noted, Mr. White "was unresponsive, [with third-degree burns] to pretty much the entire left side of his body." Due to the significance of Mr. White's injuries, he was transported to the burn unit at Wake Forest Baptist Hospital. Mr. White's blood test revealed an alcohol level of .231 milligrams per deciliter of blood. The attending physician determined Mr. White suffered from an inhalation injury and severe burn shock. Thereafter, Mr. White began showing symptoms of sepsis. After receiving numerous medical treatments, including multiple surgeries, Mr. White passed away.

At trial, Defendant testified his memory of the night was "off and on." Defendant recalled, sometime during the night, he "perform[ed] oral sex on [Mr. White]." Defendant further recalled that at another point, Mr. White was having sexual intercourse with him, to which he said "no" and pulled away. Defendant then began "freaking out," and remembered having "a weird visual of [ ] being in a desert." Defendant began "yelling about Sharia law" and punched Mr. White "with a right hook." Mr. White then attempted to retaliate, so Defendant punched him "off the bed." Defendant grabbed the hotel telephone wire, "looped it around [Mr. White's] neck, and [ ] pulled as hard as [he] could." He then grabbed the telephone and began

hitting Mr. White in the head. Defendant next remembers throwing the television across the room, which landed "on top of [Mr. White]." Defendant's actions culminated in him "lighting the [bed's] comforter on fire" and "throwing it on [Mr. White]." After doing so, Defendant remembers standing outside the Battleground Inn and yelling about "a bomb in the hotel."

On 30 October 2017, the jury found Defendant guilty of first-degree murder and first-degree arson. It found Defendant guilty of first-degree murder on the basis of malice, premeditation, and deliberation, and under the felony murder rule. For murder, the trial court sentenced Defendant to life imprisonment without the possibility of parole. For arson, the trial court sentenced Defendant, in a consecutive manner, to 64 to 89 months imprisonment. Defendant appealed to this Court, contending the trial court erred by: (1) denying his motion to dismiss the arson charge; (2) denying his motion to dismiss the murder charge because the State failed to present substantial evidence of Defendant's sanity at the time of the commission of the charged offense; and (3) determining that his short-form murder indictment was valid. *State v. Gupton*, 268 N.C. App. 153, 833 S.E.2d 260 (Oct. 15, 2019) (unpublished). This Court discerned no error. *Id.*

On 10 December 2019, Defendant moved for postconviction discovery pursuant to N.C. Gen. Stat. § 15A-1415(f) (2023), which was denied. On 30 April 2020, Defendant filed four motions: (1) an MAR containing five ineffective assistance of counsel ("IAC") claims; (2) a postconviction motion to test his blood for controlled

substances; (3) an *ex parte* motion for state funding to hire psychiatric and fire experts; and (4) a second motion for postconviction discovery. With respect to the MAR, Defendant attached an affidavit from one of his trial attorneys, Mr. Wayne Baucino. In response to the MAR, the State submitted an affidavit from Defendant's other trial attorney, Mr. Ames Chamberlain. The MAR court granted Defendant's second motion for postconviction discovery. However, the MAR court denied the other three motions. The trial court summarily denied Defendant's MAR without conducting an evidentiary hearing.

## II.    Jurisdiction

On 28 June 2022, Defendant petitioned our Court for certiorari, requesting review of the MAR court's order denying his motions. This Court granted Defendant's petition on 4 October 2022. *See* N.C. Gen. Stat. § 7A-32 (2023) ("Power of Supreme Court and Court of Appeals to issue remedial writs"); *see also* N.C. R. App. P. 21(a)(1) ("The writ of certiorari may be issued in appropriate circumstances by either appellate court to permit review of the judgments and orders of trial tribunals . . . ."). We thus proceed with our review on the merits.

## III.    Analysis

Defendant asks our Court to consider whether the MAR court erred by (1) summarily denying Defendant's MAR and accompanying postconviction motions without an evidentiary hearing; (2) holding Defendant's claims could have been raised and decided on direct appeal, and were, therefore, procedurally barred

pursuant to N.C. Gen. Stat. § 15A-1419; and (3) denying Defendant's postconviction motions to test his blood for controlled substances, and for State funding to hire psychiatric and fire experts. After careful consideration, we hold the trial court correctly concluded that Defendant was procedurally barred from raising his MAR under subsection 15A-1419(a)(3), and no exceptions to the procedural bar apply under subsections 15A-1419(c) or (e). Since Defendant is procedurally barred, we decline to consider his other issues raised on appeal as they are now moot.

## A. Procedural Bar

Defendant contends the MAR court erred in determining his IAC claims were procedurally barred under N.C. Gen. Stat. § 15A-1419(a)(3). Defendant assigns error "because the claims required that the deciding court answer questions regarding trial counsels' strategy and impressions which could not have been resolved on the cold trial record." We disagree since Defendant was in a position to adequately raise the issue on his previous direct appeal. *See State v. Bell*, 387 N.C. 262, 274, 913 S.E.2d 142, 150 (2025).

Under N.C. Gen. Stat. § 15A-1419(a)(1)–(4), an MAR shall be denied for any of the following reasons:

> (1) Upon a previous motion made pursuant to this Article, the defendant was in a position to adequately raise the ground or issue underlying the present motion but did not do so. This subdivision does not apply when the previous motion was made within 10 days after entry of judgment or the previous motion was made during the pendency of the direct appeal.

(2) The ground or issue underlying the motion was previously determined on the merits upon an appeal from the judgment or upon a previous motion or proceeding in the courts of this State or a federal court, unless since the time of such previous determination there has been a retroactively effective change in the law controlling such issue.

(3) Upon a previous appeal the defendant was in a position to adequately raise the ground or issue underlying the present motion but did not do so.

(4) The defendant failed to file a timely motion for appropriate relief as required by G.S. 15A-1415(a).

Relevant here, subsection 15A-1419(a)(3) states a court "shall deny" an MAR where, "[u]pon a previous appeal the defendant was in a position to adequately raise the ground or issue underlying the present motion but did not do so[.]" *Bell*, 387 N.C. at 274, 913 S.E.2d at 150 (citations and quotation marks omitted); *State v. Hyatt*, 355 N.C. 642, 668, 566 S.E.2d 61, 78 (2002) ("To avoid procedural default under N.C. [Gen. Stat.] § 15A-1419(a)(3), defendants must raise those IAC claims on direct review that are apparent from the record.").

"N.C. [Gen. Stat.] § 15A-1419(a)(3) is not a general rule that any claim not brought on direct appeal is forfeited on state collateral review and requires the reviewing court, instead, to determine whether the particular claim at issue could have been brought on direct review." *State v. Hyman*, 371 N.C. 363, 383, 817 S.E.2d 157, 169–70 (2018) (citations and quotation marks omitted). For a defendant to be "subject to the procedural default specified in N.C. [Gen. Stat.] § 15A-1419(a)(3), the

direct appeal record must have contained sufficient information to permit the reviewing court to make all the factual and legal determinations necessary to allow a proper resolution of the claim in question." *Id.* at 383, 817 S.E.2d at 170.

N.C. Gen. Stat. § 15A-1419(b) provides two exceptions to the procedural bar rule if a defendant can demonstrate: "(1) [g]ood cause for excusing the ground for denial . . . and . . . actual prejudice resulting from the defendant's claim, or (2) [t]hat failure to consider the defendant's claim will result in a fundamental miscarriage of justice." *State v. Tucker*, 385 N.C. 471, 485, 895 S.E.2d 532, 544 (2023) (citation and quotation marks omitted). Good cause may be shown where a defendant "establishes by a preponderance of the evidence" that his failure to timely raise the claim or motion was:

> (1) The result of State action in violation of the United States Constitution or the North Carolina Constitution including ineffective assistance of trial or appellate counsel;
>
> (2) The result of the recognition of a new federal or State right which is retroactively applicable; or
>
> (3) Based on a factual predicate that could not have been discovered through the exercise of reasonable diligence in time to present the claim on a previous State or federal postconviction review.

N.C. Gen. Stat. § 15A-1419(c). A fundamental miscarriage of justice is present if:

> (1) The defendant establishes that more likely than not, but for the error, no reasonable fact finder would have found the defendant guilty of the underlying offense; or

(2) The defendant establishes by clear and convincing evidence that, but for the error, no reasonable fact finder would have found the defendant eligible for the death penalty.

*Id.* § 15A-1419(e).

Here, the MAR court determined subsection 15A-1419(a)(3) procedurally barred Defendant since he could have raised his IAC claims in his previous direct appeal:

> The Court finds the unambiguous record shows that all of the allegations to support his IAC claims in his MAR were brought forth on the record at the trial of this case as specifically cited by Defendant throughout his MAR to the pretrial hearing and trial transcripts. The unambiguous record shows that these alleged IAC claims in Defendant's MAR were apparent from the cold record, and that Defendant was in a position to adequately raise these issues in his previous direct appeal and could have done so, yet elected not to do so. For all of the reasons set forth in this Order, Defendant has failed to show good cause, actual prejudice, or a fundamental miscarriage of justice to overcome a procedural bar. Therefore, Defendant's MAR is procedurally barred and should be denied. N.C. [Gen. Stat. §] 15A-1419; *State v. Hyatt*, 355 N.C. 642, 668 (2002).

To that end, our review shows Defendant, much like the defendant in *State v. Bell*, was in an adequate position to raise the issue in his previous direct appeal. 387 N.C. 262, 913 S.E.2d 142 (2025). In *Bell*, the defendant was convicted in 2001 of first-degree murder, kidnapping, and burning personal property. *Id.* at 263, 913 S.E.2d at 143. The defendant appealed to the North Carolina Supreme Court in 2004, asserting "numerous *Batson* violations related to the striking of jurors during voir dire." *Id.* at

266, 913 S.E.2d at 145. The Court ultimately "upheld defendant's conviction and death sentence, concluding that defendant received a fair trial and capital sentencing hearing." *Id.* From there, the defendant filed a petition for writ of certiorari with the Supreme Court of the United States; that petition was denied. *Id.*

On 12 May 2006, the defendant filed a postconviction MAR. *Id.* The defendant later amended his MAR to include a *J.E.B.* claim[1] on 13 April 2012. *Id.* The defendant's claim was "based on an affidavit filed on 9 January 2012 by . . . one of the State's prosecutors at defendant's murder trial." *Id.* Upon review, the trial court summarily denied the defendant's MAR without conducting an evidentiary hearing. *Id.* at 267, 913 S.E.2d at 146. The trial court reasoned, "[s]ince defendant was in a position to adequately raise this claim on direct appeal but failed to do so, this claim is procedurally barred from review pursuant to N.C. [Gen. Stat.] § 15A-1419(a)(3)." *Id.* at 267, 913 S.E.2d at 146.

After granting the defendant's petition for writ of certiorari, the North Carolina Supreme Court considered whether the trial court erroneously determined he was procedurally barred under N.C. Gen. Stat. § 15A-1419(a)(3). *Id.* at 279, 913 S.E.2d at 153. The defendant maintained:

> the MAR court erred in concluding that his *J.E.B.* claim
> was procedurally barred, because without the Butler
> affidavit, filed in 2012, defendant was not in a position to

---

[1] *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 114 S. Ct. 1419 (1994) (holding preemptory strikes on the basis of sex were unconstitutional violations of the Equal Protections Clause of the Fourteenth Amendment.).

> "adequately" raise the *J.E.B.* claim in his 2001 appeal. N.C.
> [Gen. Stat.] § 15A-1419(a)(3). Phrased another way,
> defendant contends that, without the [prosecutor's]
> affidavit, the record did not "contain[ ] sufficient
> information to permit the reviewing court to make all the
> factual and legal determinations necessary to allow a
> proper resolution of the claim in question."

*Id.* at 275, 913 S.E.2d at 150 (quoting *Hyman*, 371 N.C. at 383, 817 S.E.2d at 170).

The Court disagreed with the defendant, concluding that he was "procedurally barred and . . . has not demonstrated an exception to that bar." *Id.* at 274, 913 S.E.2d at 150. When addressing the exceptions to the procedural bar, the Court limited its review to the good cause exception since the defendant made "no argument that failure to consider his *J.E.B.* claim will result in a fundamental miscarriage of justice." *Id.* at 279, 913 S.E.2d at 153. After consideration of the good cause exception, the Court concluded, "the [prosecutor's] affidavit did not provide a factual predicate that could not have been discovered by analyzing the cold record." *Id.* at 280, 913 S.E.2d at 154. The Court thus held, the defendant's claim, "raised for the first time in his Amendment to Motion for Appropriate Relief—is procedurally barred pursuant to N.C.G.S. § 15A-1419(a)(3)." *Id.* at 281, 913 S.E.2d 154.

Similarly, here, Defendant did not raise his MAR contentions on direct appeal. Indeed, Defendant's MAR was raised after our Court previously upheld his convictions in *Gupton I.* As in *Bell*, Defendant forfeited these challenges by failing to raise them on his first appeal. In addition, Defendant based his MAR upon affidavits produced *after* the conclusion of his direct appeal. Although these affidavits did not

exist in the previous direct appeal record, we hold Defendant was in a position to adequately raise the issues had he exercised reasonable diligence. Thus, the only way for Defendant's MAR to survive subsection 15A-1419(a)(3)'s procedural bar would be to argue good cause and actual prejudice, or a fundamental miscarriage of justice. *Id.* §15A-1419(b). But a close inspection of Defendant's brief reveals he argued neither of these exceptions. As in *Bell*, we decline to evaluate the merits of these exceptions absent Defendant's argument. 387 N.C. at 279, 913 S.E.2d at 153 (When addressing the exceptions to the procedural bar, the Court limited its review to the good cause exception since the defendant made "no argument that failure to consider his *J.E.B.* claim will result in a fundamental miscarriage of justice."). Accordingly, we hold the trial court did not commit error by determining Defendant was procedurally barred from raising his MAR under N.C. Gen. Stat. § 15A-1419(a)(3).

## IV.  **Conclusion**

We hold the MAR court did not err by summarily denying Defendant's motions since he was in a position to adequately raise these claims on his previous direct appeal. Accordingly, we affirm the trial court's order.

AFFIRMED.

Judges HAMPSON and WOOD concur.

Report per Rule 30(e).