IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-469

Filed 21 January 2026

Guildford County, Nos. 12CR024422-400, 12CR076539-400, 12CR076540-400

STATE OF NORTH CAROLINA

v.

DWAYNE HAIZLIP, Defendant.

Appeal by defendant from order entered 20 March 2024 by Judge Tonia A. Cutchin in Guilford County Superior Court. Heard in the Court of Appeals 19 November 2025.

> *Attorney General Jeff Jackson, by Special Deputy Attorney General Zachary K. Dunn, for the State.*
>
> *Yoder Law PLLC, by Jason Christopher Yoder, for defendant-appellant.*

FLOOD, Judge.

Defendant Dwayne Haizlip appeals from the trial court's order denying his motion for appropriate relief ("MAR"). On appeal, Defendant argues the trial court erred in denying his MAR for three reasons: first, the trial court erred in determining that his claim was procedurally barred; second, there has been a retroactively effective change in applicable law pertaining to forfeiture of counsel affecting his MAR; and, third, he did not waive or forfeit his right to counsel. After careful review, we conclude Defendant's claim is procedurally barred under N.C.G.S. § 15A-

1419(a)(1). We therefore affirm the trial court's denial of his MAR and deny Defendant's request for a new trial.

## I. Factual and Procedural Background

On 2 July 2012, a Guilford County Grand Jury indicted Defendant on charges of trafficking in cocaine by possession, trafficking in cocaine by transportation, possession with intent to sell and deliver cocaine, and attaining the status of a habitual felon. Following a jury verdict finding Defendant guilty, the trial court entered a judgment imposing two concurrent sentences of 144–185 months in prison to run after expiration of any sentence he was already serving.[1]

After he was indicted, Defendant initially hired private Attorney A. Wayne Harrison to represent him at trial. On 12 March 2013, the morning of Defendant's trial, Attorney Harrison made a motion to withdraw as counsel. Defendant stated, "I don't want this man representing me and I don't know enough about the law to represent myself." After an inquiry by the trial court, Defendant requested that the trial court discharge Attorney Harrison.

The trial court denied Attorney Harrison's motion to withdraw but allowed Defendant's motion to discharge his attorney. In denying Attorney Harrison's motion, the trial court noted that "mere disagreement over trial tactics, or deterioration of

---

[1] Because Defendant's appeal focuses on the court's alleged denial of Defendant's right to counsel on the day of trial, the facts of Defendant's underlying conviction are largely irrelevant to this appeal. Thus, this statement of facts focuses primarily on issues related to Defendant's right to counsel.

relationship . . . is insufficient to allow the motion." The case was then set for trial on 20 May 2013. The trial court informed Defendant that he would need to hire an attorney for the new trial date. After the trial court reinformed Defendant of the charges against him, the trial court recapitulated Defendant's desires that he "[did not] want to represent [him]self," did "not wish [to have] court-appointed counsel," and "wish[ed] to retain [his] own attorney," all of which Defendant confirmed. The trial court then had Defendant fill out and sign a Waiver of Counsel form, Form AOC-CR-227. When filling out the Waiver of Counsel form, Defendant checked Box 1, which addressed solely the waiver of assigned counsel, but he did not check Box 2, which would have indicated a waiver of all assistance of counsel.

After Defendant signed the waiver of assigned counsel, the trial court advised Defendant on the urgency of obtaining hired counsel:

> You're going to have to do this mighty quickly because, again, they [have] 60 days to get ready. The case is set [for] May 20th for trial. . . .
>
> In any event, you need to work on this as quickly as you can so the matter can be tried May the 20th. In your review in court, we'll see that the [c]ourt has bent over backwards to let you state your reasons for the record. . . . I'm going to give you this 60 days to go out and hire you another lawyer and see what you can do with your case.

Defendant indicated he understood and thanked the court. Defendant then requested that he be released from local jail and transferred back to the prison, as it would assist him in hiring new counsel. The State indicated it would do "[w]hatever [it] can

to accommodate [Defendant] and his arrangements for an attorney," including "releasing him from his writ" that week. The trial court warned Defendant, however, that "[t]his is a problem of your own making, so you're going to have to go out and find an attorney now, [wherever] you're situated." Although the Record does not reflect that the trial court orally warned Defendant at any time he would be forced to proceed without counsel if he did not hire an attorney prior to 20 May 2013, the trial court entered an order after the proceedings, stating, "[t]he [c]ourt informed [] Defendant he would have to proceed as [p]ro-[s]e if he failed to hire new counsel by the next court date."

On 2 April 2013, the case came before the trial court for a status hearing. Despite the State's promise to release Defendant the week of 13 March to assist him in retaining a new attorney, Defendant was still being held on the writ at the time of the status conference. When asked about his efforts to secure new counsel, Defendant stated, "Yes, Your Honor, I'm working on it, it's going great. I should have counsel soon"; however, he complained that the State's failure to release him from the local jail to prison had delayed the time he had to obtain an attorney. The trial court subsequently allowed Defendant's motion to release the writ from the local jail and entered a second written order stating it had "informed the Defendant he would have to proceed as [p]ro-[s]e if he failed to hire new counsel by the scheduled court date." The Record lacks any indication that this oral warning took place. In releasing Defendant from the writ "to hire counsel[,]" however, the trial court stated that if

Defendant did not hire counsel by the scheduled date, "the waiver of [assigned] counsel having previously been executed by you and accepted by the [c]ourt, will continue to be honored and this matter will be set for trial during the May 20th term[.]" This colloquy was in reference to the waiver of *assigned* counsel Defendant signed at the previous hearing, but Defendant did not sign a new waiver of "all assistance of counsel" at the 2 April 2013 hearing.

Prior to trial, Defendant had contacted private counsel Eddie Meeks. On 20 May 2013, Defendant's case came on for trial, and Attorney Meeks was present in the courtroom but had not yet made a general appearance on Defendant's behalf. Attorney Meeks moved to continue the case (the "Motion to Continue"), indicating to the trial court that he had requested discovery in Defendant's case two weeks prior but had not received any discovery nor seen Defendant's file. The trial court denied Attorney Meeks's Motion to Continue, explaining "[t]he [c]ourt made a specific order that indicates the [c]ourt informed [] [D]efendant he would have to proceed pro se if he failed to hire new counsel by the scheduled court date," and although the trial court would like to "accommodate" Attorney Meeks, "it's clear that [the previous trial court judges] indicated that [] [D]efendant was going to have to proceed pro se if he did not get counsel in place, and he has not done so."

Defendant's trial commenced the next day. Attorney Meeks was again present in court and objected on Defendant's behalf "to the trial going forward," arguing that continuing the trial would violate Defendant's Sixth Amendment right to counsel and

Fourteenth Amendment right to due process under the United States Constitution. The trial court again denied the motion, concluding that, based on the trial court's previous written orders, Defendant "ha[d] effectively waived his right to counsel by inaction" because he failed to retain counsel in proper time. The trial court then continued to trial, where Defendant represented himself pro se. The jury ultimately returned verdicts finding Defendant guilty of all charges, including attaining the status of a habitual felon.

Following his conviction, Defendant filed a direct appeal to this Court. *State v. Haizlip*, 235 N.C. App. 425, 2014 N.C. App. LEXIS 873, at *8 (2014) (unpublished). In relevant part, Defendant argued "the trial court prejudicially erred by forcing [him] to proceed pro se when [he] did not voluntarily and understandingly waive his constitutional right to counsel[.]" *Id*. This Court held that Defendant had forfeited his right to counsel because he "exhibited a pattern of refusing to cooperate with his attorney." *Id*. at 12. This Court's conclusion was based on then-current caselaw from this Court holding that "[a]ny willful actions on the part of the defendant that result in the absence of defense counsel constitute[] a forfeiture of the right to counsel." *Id*. at 10 (quoting *State v. Leyshon*, 211 N.C. App. 511, 518 (2011)); *see also State v. Boyd*, 200 N.C. App. 97, 102 (2009); *State v. Quick*, 179 N.C. App. 647, 649–50 (2006).

Several years later, on 8 July 2020, Defendant filed a motion for appropriate relief (the "First MAR") in Guilford County Superior Court, alleging that the denial of his Motion to Continue "deprived [him] of his right to counsel and was an abuse of

the trial court's discretion." On 17 December 2020, the trial court denied Defendant's First MAR. The trial court concluded that Defendant's argument on direct appeal—that the trial court abused its discretion in denying his Motion to Continue—was "premised on Defendant's right to counsel." Since the First MAR was similarly premised on the trial court's alleged abuse of discretion in denying Defendant's right to counsel, the trial court, citing N.C.G.S. § 15A-1419(a)(2) and (3), concluded that Defendant's claim was procedurally barred because it had previously been determined on the merits on Defendant's direct appeal. Defendant did not seek review of the order denying the First MAR.

Beginning in 2020, the North Carolina Supreme Court overruled, in part, this Court's prior cases holding that "any willful" action by a defendant can result in a forfeiture of counsel. *See State v. Simpkins*, 373 N.C. 530 (2020); *State v. Atwell*, 383 N.C. 437 (2022); *State v. Harvin*, 382 N.C. 566 (2022). The *Simpkins* Court held for the first time that, only "in situations evincing egregious misconduct by a defendant, a defendant may forfeit the right to counsel." *Simpkins*, 373 N.C. at 535; *see also Atwell*, 383 N.C. at 449 ("Forfeiture of the right to counsel is not an express choice to proceed pro se, but rather is a loss of the right to counsel which is imposed as a result of a defendant's 'egregious misconduct.'"); *State v. Moore*, 290 N.C. App. 610, 635 (2023) (recognizing the change in the law). Though *Simpkins* was decided five months prior to Defendant's First MAR, Defendant did not argue in the First MAR that a

retroactive change of law occurred to allow him to overcome the procedural bar under N.C.G.S. § 15A-1419(a)(2).

On 19 December 2023, Defendant filed a second MAR with the trial court (the "Second MAR"), again arguing that his right to counsel was violated when the trial court improperly required him to proceed pro se at trial. Defendant acknowledged that he raised this issue on direct appeal, and that his First MAR raised the issue of waiver and forfeiture of counsel. Defendant argued, however, that this Second MAR was not procedurally barred because there had been a "retroactively effective change in the law controlling such issue[,]" N.C.G.S. § 15A-1419(a)(2) (2023), based on *Atwell*, 383 N.C. at 438, and *Moore*, 290 N.C. App. at 611.

On 20 March 2024, the trial court denied Defendant's Second MAR. In its order, the trial court concluded that "the allegations made [in the Second MAR] . . . have previously been determined on the merits, barred from reasserting, wholly insufficient, and completely without merit." The trial court's order, however, did not specifically address Defendant's argument that a "retroactively effective change in the law controlling such issue" had occurred.

Defendant subsequently filed a petition for writ of certiorari with this Court, seeking review of the denial of the Second MAR, which this Court granted on 23 January 2025.

## II. <u>Jurisdiction</u>

By virtue of this Court's grant of Defendant's petition for writ of certiorari under Rule 21 of the North Carolina Rules of Appellate Procedure, we have jurisdiction to review the trial court's denial of the Second MAR pursuant to N.C.G.S. § 15A-1422(c)(3) (2023).

### III. <u>Standard of Review</u>

"This Court reviews a lower court's order on [MARs] to determine whether the findings of fact are supported by evidence, whether the findings of fact support the conclusions of law, and whether the conclusions of law support the order entered by the trial court." *State v. Tucker*, 385 N.C. 471, 484 (2023) (citations and internal quotation marks omitted). "We review issues of law de novo." *Id.* (citations omitted). Under a de novo review, this Court "considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *State v. Williams*, 362 N.C. 628, 632–33 (2008) (citations and internal quotation marks omitted).

### IV. <u>Analysis</u>

On appeal, Defendant argues the trial court erred in denying the Second MAR. Specifically, Defendant contends: (A) the Second MAR was not procedurally barred because he was not in a position to adequately raise *Simpkins* in his First MAR; (B) the trial court erred in failing to consider whether *Simpkins* and *Atwell* are retroactively applicable to Defendant's case under *Teague* to overcome the procedural bar; and (C) the trial court erred in concluding that Defendant waived or forfeited his right to counsel by conduct because *Simpkins* and *Atwell* are retroactively applicable

to Defendant's claim. We disagree, and because we conclude Defendant's Second MAR was procedurally barred, we do not reach Defendant's remaining issues.

## A. Procedural Bar

Defendant first argues the trial court erred in denying the Second MAR because (1) he was not in a position to adequately raise the forfeiture issue in his First MAR, as the rule was not explicitly announced until after Defendant's First MAR; and (2) alternatively, even if we conclude he was in a position to adequately raise the forfeiture issue, he is nevertheless entitled to an exception to the procedural bar because there has been a retroactively effective change in the forfeiture law since his First MAR. We disagree.

Section 15A-1419 lists several grounds for the denial of a MAR. Relevant here, an MAR may be denied in the following instances: if, "[u]pon a previous [MAR], the defendant was in a position to adequately raise the ground or issue underlying the present [MAR] but did not do so[,]" N.C.G.S. § 15A-1419(a)(1) (2023), or if

> [t]he ground or issue underlying the [present MAR] was *previously determined on the merits . . . upon a previous [MAR]* or proceeding in the courts of this State or a federal court, unless *since the time* of such previous determination there has been a retroactively effective change in the law controlling such issue.

N.C.G.S. § 15A-1419(a)(2) (2023) (emphasis added). If any of these circumstances are present, "the court shall deny the motion . . . unless the defendant can demonstrate" that an exception applies. N.C.G.S. § 15A-1419(b) (2023). Thus, we must first address

whether Defendant was in a position to raise the forfeiture issue in his First MAR under N.C.G.S. § 15A-1419(a)(1), and if so, whether Defendant demonstrated that an exception applies.

## 1. Position to Adequately Raise an Issue

Defendant argues that the trial court erred in determining the Second MAR was procedurally barred under N.C.G.S § 15A-1419(a)(1) because he was not in a position to adequately raise the issue in his First MAR. Specifically, Defendant argues that, because *State v. Patterson*, 272 N.C. App. 569, 574–75 (2020)—decided after Defendant's First MAR—was the first case to explicitly announce a new change in the law regarding forfeiture, Defendant is not procedurally barred for failing to raise *Simpkins*—decided five months prior to his First MAR—in his First MAR. Defendant acknowledges that *Simpkins* predated his First MAR, but nonetheless argues that, even if he could have raised *Simpkins* in his First MAR, "he was not in a position to 'adequately' do so until *Patterson*, *Moore*, *Atwell*, and *Harvin* had been decided" because this Court's prior reasoning that any willful action constitutes forfeiture was rejected only in a footnote in *Simpkins*. We disagree, and conclude Defendant was in a position to raise the forfeiture issue in his First MAR.

"[MARs] generally allow defendants to raise arguments that could not have been raised in an original appeal, such as . . . claims based on rights arising by reason of later constitutional decisions announcing new principles or changes in the law." *State v. Price,* 331 N.C. 620, 630 (1992) (citation omitted). Our Supreme Court has

explained that N.C.G.S. § 15A-1419's procedural bar "'is not a general rule that any claim not brought on direct review is forfeited on state collateral review' and requires the reviewing court, instead, 'to determine whether the particular claim at issue *could* have been brought on direct review.'" *State v. Hyman*, 371 N.C. 363, 383 (2018) (quoting *State v. Fair*, 354 N.C. 131, 166 (2001)) (emphasis added).

Here, Defendant does not dispute that *Simpkins* predated his First MAR. Defendant argues, however, that he was not in a position to adequately raise *Simpkins* in his First MAR because the new change in law was not unambiguously announced until *Patterson*, *Atwell,* and *Harvin*, which were all decided after Defendant's First MAR. Defendant further contends there was a "later constitutional decision[] announcing new principles or changes in the law" regarding forfeiture that Defendant could not have adequately raised in his First MAR. *See Price*, 331 N.C. at 630. We disagree.

In his First MAR, Defendant argued that he did not forfeit his right to counsel, and the trial court abused its discretion by forcing him to proceed to trial pro se. Defendant did not, however, raise *Simpkins* or argue that a new change in law had occurred since the time of his direct appeal. Because both Defendant's direct appeal and First MAR were premised on the same legal arguments regarding forfeiture, the trial court therefore denied Defendant's First MAR on the ground that it had previously been determined on the merits on direct appeal.

In arguing that he was not in a position to raise *Simpkins* in his First MAR,

Defendant contends that, because "this Court's prior reasoning was rejected in a footnote[ in *Simpkins*,] . . . [e]ven a seasoned attorney would not immediately recognize the sea change of law that was about to happen"; thus, according to Defendant, he was not in a position to adequately raise the forfeiture issue in his First MAR until *Patterson* had been decided, clearly identifying the footnote change in *Simpkins*.

Notably, however, *Patterson* was heard by this Court on 29 April 2020, just sixty days after our Supreme Court's decision in *Simpkins*. *See Patterson*, 272 N.C. App. at 569. Despite this short timeframe, the *Patterson* defendant nevertheless raised and argued *Simpkins* before this Court. As the *Patterson* defendant was able to adequately raise *Simpkins* for the issue of forfeiture just two months after it was decided, we conclude Defendant here was similarly in a position to adequately raise *Simpkins* in his First MAR, filed five months after it was decided, but failed to do so. *See Patterson*, 272 N.C. App. at 574; *see also* N.C.G.S. § 15A-1419(a)(1).

Consequently, because *Simpkins* was announced prior to Defendant's First MAR, it was not a "*later* constitutional decision[] announcing new principles or changes in the law" that would excuse Defendant's failure to raise *Simpkins* in his First MAR and thus allow him to overcome the procedural bar of N.C.G.S § 15A-1419(a)(1). *Price*, 331 N.C. at 630 (emphasis added); *see also Hyman*, 371 N.C. at 383 (holding a defendant's claim is procedurally barred if "the particular claim at issue *could* have been brought on direct review" (emphasis added)).

In sum, because the grounds underlying the issue of forfeiture were established at the time Defendant filed his First MAR, we conclude that, despite *Simpkins* being decided only five months prior to Defendant's First MAR, Defendant was "in a position to adequately raise the ground or issue underlying the present motion but did not do so"; therefore his claim is procedurally barred unless Defendant can demonstrate that his claim falls into an exception. N.C.G.S. § 15A-1419(a)(1).

### 2. Exceptions to the Procedural Bar

Defendant argues in the alternative that, should this Court determine his claim is procedurally barred under N.C.G.S. § 15A-1419(a), he is nevertheless entitled to an exception because he can show good cause and actual prejudice. Specifically, Defendant argues that, "even assuming *arguendo* a procedural bar exists, it is excused by N.C.[G.S.] § 15A-1419(c)(2)."

An exception to the procedural bar applies only if the defendant can demonstrate the following: (1) "[g]ood cause for excusing the ground for denial listed in subsection (a) of this section *and . . .* actual prejudice resulting from the defendant's claim," or (2) "[t]hat failure to consider the defendant's claim will result in a fundamental miscarriage of justice." N.C.G.S. §§ 15A-1419(b)(1), (2) (2023) (emphasis added). We address each exception, in turn.

### *a. Good Cause*

"[G]ood cause" may be shown "if the defendant establishes by a preponderance of the evidence that his failure to raise the claim" was, as relevant here, "[t]he result

of the recognition of a new federal or State right which is retroactively applicable[.]" N.C.G.S. § 15A-1419(c)(2) (2023). Our Supreme Court has adopted the federal test set forth in *Teague v. Lane*, 489 U.S. 288 (1989), as the test of retroactivity for new federal constitutional rules of criminal procedure on state collateral review. *See State v. Zuniga*, 336 N.C. 508, 513 (1994) ("[W]e hereby adopt *Teague* as the test of retroactivity for new federal constitutional rules of criminal procedure on state collateral review.").

Under the *Teague* test, the Supreme Court explained that "new rules should always be applied retroactively to cases on direct review, but that generally they should not be applied retroactively to cases on collateral review." *Teague*, 489 U.S. at 303. The *Teague* Court, however, announced two narrow exceptions to this rule, the second of which is relevant here. Under the second exception to *Teague*'s bar to retroactivity on collateral review, "a new rule will be applied retroactively if it is a watershed rule of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." *Zuniga*, 336 N.C. at 512 (internal quotation marks and brackets omitted) (citing *Teague*, 489 U.S. at 311). In other words, new rules should be applied retroactively to cases on collateral review if the new rule is a watershed rule of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding. *See id.*

In *Edwards v. Vannoy*, the United States Supreme Court clarified the contours of this exception. 593 U.S. 255 (2021). In *Edwards*, the Court was presented with two

issues: first, whether the Supreme Court's decision in *Ramos v. Louisiana*, 590 U.S. 83 (2020)—which mandated unanimous jury verdicts in serious criminal cases— announced "a new rule of criminal procedure, as opposed to applying a settled rule"; and second, if so, whether "it fall[s] within [*Teague's*] exception for watershed rules of criminal procedure that apply retroactively on federal collateral review[.]" *Edwards*, 593 U.S. at 264-65.

The Court explained that "[a] rule is new unless it was 'dictated by precedent existing at the time the defendant's conviction became final.'" *Edwards*, 593 U.S. at 265 (quoting *Teague*, 489 U.S. at 301). "In other words, a rule is new unless, at the time the conviction became final, the rule was already apparent to all reasonable jurists." *Id.* (citation and internal quotation marks omitted). "The starkest example of a decision announcing a new rule is a decision that overrules an earlier case." *Id.* (citation omitted). This "watershed exception is extremely narrow and applies only when, among other things, the new rule alters our understanding of the bedrock procedural elements essential to the fairness of a proceeding." *Id.* at 267 (citation and internal quotation marks omitted).

The *Edwards* Court first concluded that *Ramos* did announce a new rule because "the critical point is that reasonable jurists who considered the question before *Ramos* interpreted [the prior case] to allow non-unanimous jury verdicts in state criminal trials." *Id.* at 266. Nevertheless, the Court determined that the new rule that jury verdicts must be unanimous in serious criminal cases does not apply

- 16 -

retroactively on federal collateral review, as it was not a "watershed rule of criminal procedure." *Id.* at 273. The *Edwards* Court reasoned that, "[b]y renouncing [the pre-*Ramos* case] and expressly requiring unanimous jury verdicts in state criminal trials, *Ramos* plainly announced a new rule for purposes of this Court's retroactivity doctrine. And new rules of criminal procedure ordinarily do not apply retroactively on federal collateral review." *Id.*

In rejecting the defendant's contention that *Ramos* should apply retroactively, the Court explained it "has identified only one pre-*Teague* procedural rule as watershed: *the right to counsel* recognized in the Court's landmark decision in *Gideon v. Wainwright*, 372 U. S. 335, 344–345[] [] (1963)." *Edwards*, 593 U.S. at 267 (emphasis added).

Here, we agree with Defendant that *Simpkins* announced a "new rule" for retroactivity purposes, and we further agree that the forfeiture issue in *Simpkins* constitutes a "watershed rule of criminal procedure." *Id.* at 273. We disagree, however, that Defendant's failure to raise *Simpkins* in his First MAR was the "*result of [that] recognition*," and therefore conclude Defendant has not shown good cause to excuse the procedural bar. *See* N.C.G.S. § 15A-1419(c)(2) (emphasis added).

In *Simpkins*, the defendant was convicted by a jury after having been forced to proceed pro se at trial. 373 N.C. at 531. The trial court did not conduct the required colloquy for waiver of counsel under N.C.G.S. § 15A-1242 (2019), as it determined that the defendant had waived counsel by his conduct. *Id.* at 531–32. On appeal, this

- 17 -

Court vacated the defendant's conviction for the trial court's failure to comply with the statutory requirements of N.C.G.S. § 15A-1242, and the case was then taken up by the North Carolina Supreme Court to determine whether, in the absence of valid waiver, a defendant may nevertheless *forfeit* his right to counsel by conduct. *Id.* at 535.

In affirming this Court's decision to vacate the defendant's conviction, our Supreme Court explained, "[w]e have never previously held that a criminal defendant in North Carolina can forfeit the right to counsel. However, the Court of Appeals has recognized, in addition to waiver of counsel, that a defendant who engages in serious misconduct may forfeit his constitutional rights to counsel." *Id.* (internal citations and quotation marks omitted). "We agree and hold that, in situations evincing egregious misconduct by a defendant, a defendant may forfeit the right to counsel." *Id.*

In overruling prior decisions of this Court finding forfeiture by "any willful action," the *Simpkins* Court explained in a footnote:

> The Court of Appeals has previously stated that "[a]ny willful actions on the part of the defendant that result in the absence of defense counsel [constitute] a forfeiture of the right to counsel." *State v. Quick*, 179 N.C. App. 647, 650[] [] (2006). This statement is unsupported. *Quick* cites the Court of Appeals decision in *Montgomery*, which states nothing of the sort. [*State v.*] *Montgomery*, 138 N.C. App. [521,] 524[] [2000]. Further, it is far too broad a statement to be consistent with the constitutional guarantee of the right to counsel and the law of this state.

*Id.* at 538, n.7.

The Court ultimately concluded that "Simpkins's conduct, while probably highly frustrating, was not so egregious that it frustrated the purposes of the right to counsel itself. As a result, his conduct[] did not amount to 'such serious misconduct as to warrant forfeiture of the right to counsel.'" *Id.* at 539–40 (quoting *Blakeney*, 245 N.C. App. 452, 468 (2016)).

Here, we agree *Simpkins* announced a new rule for purposes of the *Teague* test. First, although pre-*Simpkins* opinions by this Court discussed ways in which a defendant may forfeit his right to counsel, the standard for forfeiture was not explicitly announced as binding until our Supreme Court's decision in *Simpkins*, decided after Defendant's direct appeal but before his First MAR. In other words, prior to *Simpkins*, this Court was permitted to find forfeiture by any willful action, and *Simpkins* was the first case to mandate that the *only* way to forfeit was through egregious misconduct. As *Edwards* clarified, "a rule is new unless, at the time the conviction became final, the rule was already apparent to all reasonable jurists"; and, here, "the critical point is that reasonable jurists who considered the question before [*Simpkins*] interpreted [the prior caselaw] to allow [forfeiture by any willful action] in state criminal trials." *See Edwards*, 593 U.S. at 265–66.

Consequently, the *Simpkins* forfeiture standard was not "*dictated* by precedent existing at the time the defendant's conviction became final"; i.e., at the time of Defendant's direct appeal. *Id.* at 265 (citation omitted) (emphasis in original). We

therefore conclude *Simpkins* did announce a "new rule" for retroactivity purposes.

In concluding *Simpkins* announced a "new rule," we must now determine whether it constitutes "a watershed rul[e] of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." *Whorton v. Bockting*, 549 U.S. 406, 417 (2007) (internal citations and quotation marks omitted). As *Simpkins* was the first case to overrule prior decisions of this Court holding that "any willful actions" by a defendant could be grounds to force a defendant to proceed to trial without counsel; and, because "[t]he right to counsel in criminal proceedings is not only guaranteed but is considered to be fundamental in character[,]" *State v. Atwell*, 383 N.C. 437, 446 (2022) (citation and internal quotation marks omitted), we conclude that *Simpkins* announced a new "watershed rul[e] of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." *See Whorton*, 549 U.S. at 417 (internal citations and quotation marks omitted); *compare Zuniga*, 336 N.C. at 514 ("[W]e believe that a rule striking down an arbitrary unanimity requirement has the same 'primacy and centrality' of *Gideon*. Therefore, we hold that the [] rules fall within the second *Teague* exception and should be applied retroactively.").

Having determined that *Simpkins* did "recogn[ize] a new federal or State right which is retroactively applicable[,]" we next address whether Defendant's failure to raise *Simpkins* in his First MAR was the *result* of this recognition. *See* N.C.G.S. § 15A-1419(c)(2). "When determining whether good cause exists to overcome a

procedural bar, the question is whether, at the time of the procedural default, the claim was available at all." *Tucker,* 385 N.C. at 494. "Accordingly, for cause sufficient to overcome the procedural bar, it must exist beyond the control of counsel—it must not be subject to counsel's manipulation, but rather, truly unavailable." *Id.* Importantly here, "the legislature specifically exempted from the definition of good cause '[a] trial attorney's ignorance of a claim, inadvertence, or tactical decision to withhold a claim.'" *Id.* at 493 (quoting N.C.G.S. § 15A-1419(c)).

Here, the trial court denied Defendant's Second MAR on the ground that the forfeiture issue had been determined on the merits in his First MAR. As explained above, because *Simpkins* had been binding law for five months at the time of Defendant's First MAR, we conclude Defendant's failure to raise *Simpkins* in his First MAR was the result of his "attorney's ignorance of [the] claim," not the result of our Supreme Court's announcement of the new forfeiture standard in *Simpkins*. *Id.*

As such, we conclude Defendant has failed to show good cause to excuse the procedural bar, and we need not address whether Defendant has shown actual prejudice. *See* N.C.G.S. § 15A-1419(b)(1) (An exception to the procedural bar applies only if the defendant can demonstrate "[g]ood cause . . . *and* . . . actual prejudice resulting from the defendant's claim[.]" (emphasis added)).

### b. Fundamental Prejudice

Defendant may, however, alternatively be excused from the procedural bar that prevents him from bringing another forfeiture claim by showing a fundamental

miscarriage of justice occurred; thus, we address whether such a miscarriage of justice has occurred here where Defendant proceeded pro se during his trial. *See* N.C.G.S. § 15A-1419(b)(2) ("The court shall deny the [MAR] under any of the circumstances specified in this section, unless the defendant can demonstrate[] . . . [t]hat failure to consider the defendant's claim will result in a fundamental miscarriage of justice.")

A "fundamental miscarriage of justice" occurs only where "[t]he defendant establishes that, more likely than not, but for the error, no reasonable fact finder would have found the defendant guilty of the underlying offense[.]" N.C.G.S. § 15A-1419(e) (2023).

Here, Defendant generally addresses the fundamental miscarriage of justice issue in passing, arguing simply that "failure to address this claim would result in a fundamental miscarriage of justice." Defendant makes no argument to support a conclusion that a different result would have been reached but for the trial court's denial of his Motion to Continue; and, thus, this argument is abandoned. *See K2HN Constr. NC, LLC v. Five D Contractors, Inc.*, 267 N.C. App. 207, 213 (2019) ("This Court has routinely held an argument to be abandoned where an appellant presents argument without . . . authority . . . ."); *see also* N.C. R. App. P. 28(b)(6) (providing that "[i]ssues not presented in a party's brief, or in support of which no reason or argument is stated, will be taken as abandoned"). We therefore conclude Defendant has failed to meet his burden to show that he is entitled to either exception to the

procedural bar under N.C.G.S. § 15A-1419(b).

In sum, we conclude that Defendant's claim is procedurally barred under N.C.G.S. § 15A-1419(a)(1) because he was in a position to adequately raise *Simpkins* in his First MAR, but he failed to do so. Moreover, Defendant failed to show he is entitled to either exception to the procedural bar under N.C.G.S. § 15A-1419(b). Since we conclude Defendant's claim is procedurally barred under N.C.G.S. § 15A-1419(a)(1), we need not address whether Defendant is procedurally barred under N.C.G.S. § 15A-1419(a)(2). *See* N.C.G.S. § 15A-1419(b) ("The court *shall* deny the [MAR] under *any* of the circumstances specified in this section[.]" (emphasis added)).

Further, because we conclude Defendant's claim is procedurally barred, we do not address the merits of whether he forfeited his right to counsel under the new standard announced in *Simpkins* and its progeny. We emphasize, however, that we affirm the trial court's decision today solely on procedural grounds. Due to the unique procedural posture of this case, our holding is narrow. Because Defendant had an opportunity to, but failed to raise the issue of forfeiture in his First MAR in 2020 after *Simpkins* was decided, we hold that the trial court did not err in denying Defendant's Second MAR. *See* N.C.G.S. § 15A-1419(b).

## V. **Conclusion**

Upon review, we conclude Defendant's claim is procedurally barred under N.C.G.S. § 15A-1419(a)(1), and thus, the trial court did not err in denying Defendant's Second MAR.

AFFIRMED.

Judges ZACHARY and STADING concur.